IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Bankruptcy Case No. 00-3837 (JKF) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| THE STATE OF NORTH DAKOTA, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 05-573 (JPF) |
| | ) | |
| v. | ) | |
| | ) | |
| OWENS CORNING, *et al.*, | ) | |
| | ) | |
| Appellee. | ) | |

**OPENING BRIEF OF APPELLANT, THE STATE OF NORTH DAKOTA**

Theodore J. Tacconelli (No. 2678)
FERRY, JOSEPH & PEARCE, P.A.
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
Telephone: (302) 575-1555

-and-

Daniel A. Speights, Esquire
SPEIGHTS & RUNYAN
200 Jackson Avenue East
Post Office Box 685
Hampton, South Carolina 29924
Telephone: (803) 943-4444

Co-Counsel for Appellant, The State
of North Dakota

Dated: September 6, 2005

# TABLE OF CONTENTS

Page

I.   Statement of Basis of Appellate Jurisdiction .................................... 1

II.  Statement of Issues Presented ................................................ 2

III. Standard of Review .......................................................... 2

IV.  Statement of Case ........................................................... 2

    A.   Nature of the Case ..................................................... 2
    B.   Course of the Proceedings .............................................. 3
    C.   Disposition in the Bankruptcy Court ..................................... 4

V.   Statement of Facts .......................................................... 4

VI.  Legal Argument ............................................................. 5

VII. Conclusion ................................................................ 12

# TABLE OF AUTHORITIES

Cases:                                                                                                                      Page

*Drayton Public School District No. 19 v. W.R. Grace & Co.*
728 F. Supp. 1410 (D.N.D. 1989) .................................................... 10

*Hebron Public School District of Morton County v.*
*United States Gypsum Co.*, 475 N.W.2d 120 (N.D. 1991) ........................... 5,6,11

*In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) ....................... 2

*In re GFS Creations, Inc.*, 240 B.R. 43, 45 (N.D. Cal. 1999) ............................ 2

*Kansas City v. W.R. Grace & Co., et al.*,
778 S.W.2d 264 (W.D. Mo. App. 1989), *aff'd sub. nom.*,
855 S.W.2d 360 (Mo. 1993) ............................................................ 7

*Montana-Dakota Utilities Co. v. W.R. Grace & Co.*,
14 F.3d 1274 (8th Cir. 1994) ......................................... 5,6,7,8,9,10,12

*Northridge Co. v. W.R. Grace & Co.*, 556 N.W.2d 345 (Wis. App. 1996) .................. 6

*San Francisco Unified School District v. W.R. Grace & Co.*,
44 Cal.Rptr.2d 305 (Cal. App. 1995) .................................................. 7

*Tioga Public School #15 of Williams County,*
*State of North Dakota v. United States Gypsum Co.*,
984 F.2d 915 (8th Cir. 1993) .................................................. 5,7,9,10,11

## I. STATEMENT OF BASIS OF APPELLATE JURISDICTION

This appeal arises from a certain order of the Bankruptcy Court: (i) granting the Debtors' Objection to Asbestos Property Damage Claims of the State of North Dakota (claim #8774 and #8922) in its entirety; (ii) ordering that the asbestos property damage claims (claim #8774 and #8922) be disallowed and expunged in their entirety; and (iii) ordering that Robert L. Berger & Associates, LLC, the duly appointed claims agent, to make such revisions to the Claims Registry as are necessary to reflect the relief granted pursuant to this order, by the Honorable Judith K. Fitzgerald, entered on July 8, 2005 in the bankruptcy case of Owens Corning ("Owens Corning" or the "Debtors"), et al., Case No. 00-3837, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). (A- ).[1] (A- 1). The State of North Dakota (the "State" and "Appellant" herein) appeals all aspects of this order.

This Court's jurisdiction is based on 28 U.S.C. § 158(a) which provides, in relevant part:

> (a)  The district courts of the United States shall have jurisdiction to hear appeals
>
> (1)  from final judgments, orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under Section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

The Appellant filed a notice of appeal with the Bankruptcy Court on July 12, 2005 (A-3) and the appeal was docketed by United States District Court for the District of Delaware (the "Court") on August 5, 2005 [Docket No. 1].

---

[1] References to the Appendix to the Appellant's Opening Brief shall hereinafter be referred to as "(A-__)."

## II. STATEMENT OF ISSUES PRESENTED

The fundamental issue is whether the North Dakota Legislature (the "Legislature") intended on time barring the State's asbestos property damage claims by the enactment of the 1993 North Dakota revival statute applicable to "those persons who may bring claims regarding materials containing asbestos in public buildings." North Dakota Cent. Code §28-01-47(2) (2003) (the "Act"). (A-6).

## III. STANDARD OF REVIEW

Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, on appeal, findings of fact by the bankruptcy court are set aside if clearly erroneous. "A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Cellnet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003). The appellate court reviews legal conclusions *de novo* and mixed questions of law and fact under a mixed standard, "affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts." Id. Specifically, a court "may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." In re GFS Creations, Inc., 240 B.R. 43, 45 (N.D. Cal. 1999).

## IV. STATEMENT OF THE CASE

### A. **Nature of the Case**

This is an appeal from a decision of the Bankruptcy Court that determined that the State's asbestos property damage claims were time barred by the Act.

2

**B.     Course of the Proceedings**

On April 15, 2002, Speights & Runyan, on behalf of the State, filed two (2) separate asbestos property damage claims (Claim #8774 and #8922) with Robert L. Berger & Associates, LLC, the Debtors' duly appointed claims agent in this jointly administered bankruptcy proceeding. (A-8).

On December 2, 2004, the Debtors' filed its Objection to Asbestos Property Damages Claims of the State (Claim #8774 and #8922) (the "Objection"). (A-12).

On January 7, 2005, Speights & Runyan, on behalf of the State, among other asbestos property damage claimants, filed its Consolidated Response to the Debtors' Objections to Certain Asbestos Property Damage Claims (the "Consolidated Response"). (A-50).

On March 4, 2005, the State filed its Joinder in Speights & Runyan's First Supplemental Response to Debtors' Objections to Asbestos Property Damage Claims of Garrison Public School District #51 (Claim #8783 and #8926) (the "Joinder"). (A-119).

On April 29, 2005, the Debtors' filed a Motion Pursuant to Del.Bankr.LR 9006-1(d) to File Reply in Support of its Objections to Certain Asbestos Property Damage Claims (the "Motion"). (A-120). On May 16, 2005, the Bankruptcy Court entered an Order granting the Debtors' Motion (the "Order"). (A-192).

On June 17, 2005, the State filed its Sur-Reply to Debtors' Reply to State's Response to Debtors' Objections to State's Asbestos Property Damage Claims (Claim #8783 and #8926) (the "Sur-Reply"). (A-193).

On July 5, 2005, the Debtors' filed a Certification of Counsel Regarding its Objection to Asbestos Property Damage Claims of the State (Claim #8774 and #8922) (the "Certification"). (A-197).

3

### C. Disposition in the Bankruptcy Court

Subsequent to the State's filing of its Sur-Reply, on July 8, 2005, the Bankruptcy Court issued an order ("the July 8th Order") (A-1) a) granting the Debtors' Objection to Asbestos Property Damage Claims of the State of North Dakota (claim #8774 and #8922) in its entirety; b) ordering that the asbestos property damage claims (claim #8774 and #8922) be disallowed and expunged in their entirety; and c) ordering that Robert L. Berger & Associates, LLC, the official claims agent appointed in these cases, to make such revisions to the Claims Registry as are necessary to reflect the relief granted pursuant to this order.

### V. STATEMENT OF FACTS

The State has filed claims on behalf of 232 buildings seeking recovery of costs associated with the abatement of asbestos-containing Thermal System Insulation ("TSI"). As this Court is aware from the estimation hearing it recently conducted, after Johns-Manville, the Debtors' TSI product "was the largest selling pipe and boiler insulation in the critical years of exposure, in the '60s;" the product was "ubiquitous;" the sales were "broad and on most major work sites" where high temperature insulation was used. Transcript (January 13, 2005) at 65.

The Act upon which the Bankruptcy Court based its dismissal of the State's claims was adopted in response to a 1992 trial of an asbestos property damage case in the United States District Court for the District of North Dakota. In that case, a manufacturer of friable asbestos-containing material ("ACM") obtained a defense verdict on the statute of limitations based upon a jury charge which focused on the knowledge of the building owner obtained in large part from the State. Prior to the reversal of that decision, the legislature enacted the Act to provide public building owners with a safe haven to file asbestos property damage lawsuits without facing a statute of limitations defense

based upon the knowledge of the State and all of its agencies about the hazards of asbestos. However, nothing in the legislative history suggests that it intended to bar lawsuits which had not yet accrued.

Following the adoption of the Act, the Eighth Circuit reversed the decision which led to the Act and made it plain that despite the knowledge of the building owner, the statute of limitations does not even begin to accrue until there is injury, which it defined as contamination of other property with asbestos fibers released from the product at issue and caused a health risk. Because the Debtors insisted in their Objection to the State's claims, that their product has caused no harm, there is no evidence in the record that the statute of limitations has accrued, much less run.

## VI. LEGAL ARGUMENT

Under North Dakota law, whenever an in-place ACM releases asbestos fibers which contaminate the building and cause a health risk, the building owner has been injured and at that point may institute an action for the costs of managing and removing the offending material. Tioga Public School # 15 of Williams County, State of North Dakota v. United States Gypsum Company, 984 F.2d 915 (8th Cir. 1993) ("Tioga"). Conversely, until there is contamination and a consequent health risk, there is no injury, and no lawsuit can be brought in North Dakota. Montana-Dakota Utilities Co. v. W.R. Grace & Co., 14 F.3d 1274 (8th Cir. 1994) ("MDU").

During the hearing on October 25, 2004, the Bankruptcy Court correctly recognized the universal rule that the Debtors have the burden of proof with respect to their affirmative statute of limitations defense. The North Dakota Supreme Court has held in an asbestos property damage case that the applicable six-year statute of limitations does not accrue until the aggrieved party discovers facts which constitute the basis of its claim for relief. Hebron Public School District of Morton

5

County v. United States Gypsum Co., 475 N.W.2d 120 (N.D. 1991) ("Hebron"). Because a North Dakota building owner may not bring an asbestos property damage lawsuit until there is contamination, the North Dakota statute of limitations does not accrue until the building owner "could have learned, with the exercise of reasonable diligence, that its building had been contaminated by asbestos." MDU at 1279.[2] (A-202).

MDU was an asbestos property damage case filed in 1990 and tried in the United States District Court for the District of North Dakota during the summer of 1992. The plaintiff utilities company, with facilities in many states (including multiple large turbines covered with TSI), sought the recovery of costs associated with W.R. Grace's asbestos-containing fireproofing from its headquarters building located in Bismarck, North Dakota. The parties agreed that "MDU was aware of its asbestos problem as early as 1980." Id. at 1276. (A-202). The evidence at trial established that at that time, ten years before MDU brought its lawsuit, the North Dakota Health Department issued a report which documented that the fireproofing material contained 15-25% asbestos and recommended that, although the asbestos was "apparently intact" and there were "no employee overexposure hazards," the material should be removed because it would eventually begin to deteriorate and would then pose a health hazard. Id. (A-202). However, it was not until 1988 that MDU first learned that the asbestos in the fireproofing was releasing fibers and contaminating its building. Id. (A-202).

---

[2]There are even more liberal tests available to the State. For example, fraud, misrepresentation, or concealment may prevent the running of the statute of limitations. Hebron at 122. (A-212). Also, shortly before the bankruptcy, the Wisconsin Supreme Court upheld a nuisance verdict in an asbestos property damage lawsuit. Northridge Co. v. W.R. Grace & Co., 556 N.W.2d 345 (Wis.App. 1996). Under hornbook nuisance law, the statute of limitations is continuing until the material is abated. Restatement of Torts, 2d, ¶899, comment d.

The District Court in <u>MDU</u> instructed the jury, *inter alia*, that in order to find that MDU's claim was time barred, it must only find that MDU knew or with the exercise of reasonable care should have known that the fireproofing contained asbestos and might post a health hazard. <u>Id</u>. at 1277. (A-202). Not surprisingly, the jury found in favor of the asbestos company on the statute of limitations. Two years later, however, the Eighth Circuit reversed. In a unanimous opinion authored by Chief Judge Arnold, the Court found that under North Dakota law, "Regardless of the plaintiff's knowledge of a potential cause of action, no cause of action exists until the plaintiff suffers some compensable harm." <u>Id</u>. at 1278. (A-202). Therefore, the Court recognized that, "Before we can determine when the statute of limitations began to run on MDU's claims, we must first determine when an asbestos plaintiff is injured and can bring suit." <u>Id</u>. at 1278. (A-202). The Court cited <u>Tioga</u> for the proposition that, "The asserted injury here is not simply an injury to the [covering] or to the school buildings; rather, the injury is the *contamination* of the Tioga school buildings by asbestos and the consequent health risk to the building's occupants." <u>MDU</u> at 1278 (A-202) quoting from <u>Tioga</u> at 918 (A-220) (emphasis supplied by the <u>MDU</u> Court). Based on this analysis, the Court held that the District Court committed reversible error in failing to charge the jury that the proper standard was whether MDU knew or should have known of asbestos contamination and health risk more than six years before it brought suit.[3] (A-202).

---

[3] <u>MDU</u> represents the majority view of when an asbestos cause of action accrues and when a statute of limitations is triggered. See, e.g. <u>Kansas City v. W.R. Grace & Co., et al.</u>, 778 S.W.2d 264 (W.D. Mo. App. 1989), <u>aff'd sub. nom.</u> 855 S.W.2d 360 (Mo. 1993); <u>San Francisco Unified School District v. W.R. Grace & Co.</u>, 44 Cal.Rptr.2d 305 (Cal.App. 1995). In the <u>San Francisco</u> appeal, the California appellate Court cited <u>MDU</u> and <u>Kansas City</u> with approval and held that "**consistent with the vast majority of jurisdictions that have considered the issue,**" the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos manufacturer until contamination occurs and thus, "the statute of limitations in an asbestos-in-building case does not commence until there has been damage in the form of contamination." <u>Id</u>. at 306 (A-230) (emphasis supplied).

7

The Debtors have presented no evidence that the ACM in any of the State's buildings had contaminated its property and presented a health risk, much less that the claimants knew or should have know of these prerequisites for the triggering of the statute of limitations. Moreover, the Debtors have asserted in their "Additional Objections" that, "There is no evidence of any harm arising from the Debtors' product."[4] (A-12). These are the identical arguments which the Eighth Circuit rightly found are totally at odds with each other:

> Grace argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos Monokote. The arguments are inconsistent: if MDU has suffered no injury from the Monokote, then it has no cause of action--until an injury is suffered, the statute of limitations cannot begin to run. MDU at 1279-1280, n. 9. (A-202).

The Debtors simply cannot be heard to claim that the State's statute of limitations accrued more than six years before the bankruptcy when they claim even today that there is no evidence that their product contaminated the State's building or presented a health hazard. Stated more succinctly, the Debtors have conceded that the statute of limitations has not accrued.

In addition, it is important to note that unlike the fireproofing at issue in MDU, the Debtors manufactured TSI, principally Kaylo, which was used extensively on pipes and boilers in buildings. At the urging of Owens Corning, whose counsel, Jesse Hill, was the TSI representative on the EPA committee which developed the pertinent regulations in 1987, TSI is not classified as a presently friable material:

> Thermal system insulation that has retained its structural integrity and that has an undamaged protective jacket or wrap that prevents fiber release shall be treated as nonfriable and therefore is subject only to periodic surveillance and preventive measures as necessary. AHERA Regulation, 52 F.Reg. 41826, October 30, 1987 at p. 41849. (A-246).

---

[4]Objections at 7-8. (A-12).

8

Consequently, as a result of the regulation which Owens Corning obtained, contamination and health risk (i.e. injury and resulting damages) – the legal prerequisites for a lawsuit – do not ordinarily take place with respect to TSI until the material has lost its structural integrity.

The Debtors cannot prevail at this point, if ever, on their statute of limitations argument under the MDU precedent. Despite the fact that MDU was a North Dakota case, however, the Debtors argued and the Bankruptcy Court found that the State's claims are barred by the Act designed to help public building owners. As reflected in the legislative history presented to the Bankruptcy Court, the revival statute was passed in 1993 at the urging of the State directly as a result of the District Court's rulings the previous year in MDU. Not only was the District Court's standard difficult for any building owner, but, as noted above, it was the State that prepared the 1980 report which furnished the basis of the dismissal of MDU's claim. In addition, under the District Court's standard, the trial was monopolized by testimony surrounding what the building owner knew or could have known about asbestos, rather than whether there was a compensable injury. The year after the revival statute was enacted, the Eighth Circuit reversed the District Court and explained the accrual test which largely obviated the need for the revival statute.

Nevertheless, the Bankruptcy Court found that the revival statute – passed to assist public building owners and the public health – eliminated the right of public building owners to bring lawsuits while allowing private building owners to litigate such actions for years under the MDU appellate standard. It is patently clear, however, that the legislature intended to assist public building owners, not to discriminate against them. More importantly, under Tioga, the State had no right to bring a lawsuit against the Debtors for their "harmless" product before 1997; to affirm the Bankruptcy Court's Order would mean that the legislature intended to bar asbestos property damage

9

lawsuits by public building owners before they even existed. Leaving aside the legal impediments to abolishing an action before it accrues, there is no evidence that the legislature intended such an absurd result.

Fortunately, this Alice-In-Wonderland interpretation is not required by the reading of the revival statute. The only common sense interpretation of the act is that in exchange for the revival of the statute of limitations, the State was told that it had to bring its lawsuit *under the revival statute* by August 1, 1997. The Act specifically provides that, "By enactment of this statute of limitations, the Legislative Assembly does not imply that suits would otherwise be barred by an existing limitations period." With the reversal of the MDU and the 1994 Eighth Circuit opinion establishing the statute of limitations test for asbestos property damage cases in North Dakota, the State need not and does not rely on the revival statute and could not have done so under the Debtors' view because it did not have a cause of action to be revived prior to 1997. Not only is there no evidence that the State's claim had accrued before the bankruptcy, but the Debtors position is that their products have not caused any harm through the release of asbestos fibers. Therefore, the State's claims against the Debtors did not exist before the revival statute was enacted, much less before the limitations period had expired.[5]

The Debtors have recognized that the legislative history demonstrates that the Act "sets a specific deadline by which all claims must be brought," but attempt to deal with the predicament of there being no claims under Tioga and no benefit for the State by asserting that the Act entitled

---

[5] Even it the revival statute could be used as an absolute bar, by its terms it would not preclude the State from making a claim for the diminution in value of its property as a result of the ACM. In addition, at such point that the ACM presents a hazard, the State has a right to demand that the Debtors abate the hazard, and if they do not, it may pursue a restitution action against the Debtors. Drayton Public School District No. 19 v. W.R. Grace & Co., 728 F.Supp. 1410 (D.N.D. 1989).

10

"Limitation of Action for Asbestos Claims" actually created a new cause of action inconsistent with the <u>Tioga</u> decision (and almost every other property damage case in the country). Transcript (May 16, 2005) at 8, 30. (A-256). Specifically, the Debtors have argued that under the Act, the State could have filed a lawsuit against them before August 1, 1997 and recovered without any necessity whatsoever to show injury. What the legislative history reveals is that there is no evidence whatsoever to support such absolute liability, not even a concern from the industry representatives who would have screamed if such a preposterous suggestion had been made.

In contrast to the Debtors' explanation, the Court suggested at one point that the legislature might have intended to enact a statute of repose against the State and no one else. Transcript (May 16, 2005) at 16-18. (A-256). Only two years before the Act was adopted, the North Dakota Supreme Court held that the statute of repose does not apply in an asbestos property damage action brought by a public building owner. <u>Hebron</u> at 120. (A-212). Yet, neither the Act nor the legislative history mentions the word repose or the impact of the Act on the <u>Hebron</u> decision. It defies logic to conclude that the North Dakota Legislature, which wanted to assist public building owners, would impose a repose upon them for nothing in return (again, the State had no claim to bring against the Debtors before August 1, 1997). To accept this interpretation would simply mean that the legislature intended to provide immunity to those asbestos manufactures whose products had not yet produced injury.

In summary, there is nothing in the legislative history that suggests that the legislature intended to change the definition of when a building owner was injured and had the right to bring a lawsuit. There is nothing in the legislative history to suggest that the legislature intended to bar a public building owner from bringing a lawsuit it never had the right to bring and to reward the

11

asbestos manufacturers with absolute protection from such lawsuits after they accrued. There is nothing in the legislative history to suggest that the legislature intended to place the State in an inferior position to almost all other building owners in America who benefit from standard expressed in MDU and other cases.

## VII. CONCLUSION

At the time the Act was considered, a public building owner could not bring an asbestos property damage lawsuit unless and until it had been injured (defined as contamination and health risk caused by the manufacturer's product). Consequently, the State had no lawsuit against the Debtors which could have been or was revived by the Act. To impose the 1997 deadline on the State would punish the State without any benefit from the Act while at the same time providing the Debtors an absolute immunity. Such an interpretation runs counter to the legislative history and common sense.

Dated: September 6, 2005                    FERRY, JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, Delaware 19899
(302) 575-1555

-and-

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Bar No. 4252)
200 Jackson Avenue East
Post Office Box 685
Hampton, South Carolina 29924
(803) 943-4444

Co-Counsel for Appellant, The State of North Dakota