IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| OWENS CORNING, et al., | ) | Case No.: 00-3837 (JKF) |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | Re: Docket Nos. 13515 and 14619 |

STATE OF NORTH DAKOTA'S JOINDER IN SPEIGHTS & RUNYAN'S
FIRST SUPPLEMENTAL RESPONSE TO DEBTORS' OBJECTIONS TO
ASBESTOS PROPERTY DAMAGE CLAIMS OF GARRISON PUBLIC
SCHOOL DISTRICT #51 (CLAIM #8783, CLAIM #8926)

In further response to Debtors' Objections to Asbestos Property Damage Claims of The State

of North Dakota (Claim #3774, Claim #8922), The State of North Dakota, which previously filed

a Consolidated Response to the Debtors' Objections to its Claims, joins in Speights & Runyan's

First Supplemental Response to Debtors' Objections to Asbestos Property Damage Claims of

Garrison Public School District #51 (Claim #8783, Claim #8926).

Dated: March 4, 2005
Wilmington, Delaware

FERRY, JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 904
PO Box 1351
Wilmington, DE 19899
(302) 575-1555
(302) 575-1714 (fax)

-and-

SPEIGHTS & RUNYAN
Daniel A. Speights (SC Bar No. 4252)
200 Jackson Avenue East
Post Office Box 685
Hampton, South Carolina 29924
(803) 943-4444
(803) 943-4599 (fax)

Co-Counsel for the Speights & Runyan
Claimants

3/4/05





MAY 0 9 2005

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|                          |   |                                |
|--------------------------|---|--------------------------------|
| IN RE:                   | : | Chapter 11                     |
|                          | : |                                |
| OWENS CORNING, et al.,   | : | Case Nos. 00-3837 (JKF)        |
|                          | : |                                |
| Debtors.                 | : | (Jointly Administered)         |

Related to Docket Nos. 13509, 13515,
and 13519
Hearing Date: May 16, 2005 at 10:00 a.m.
Before the Honorable Judith K. Fitzgerald
U.S. Bankruptcy Court, 824 Market St.,
Wilmington, DE 19801

### DEBTORS' MOTION PURSUANT TO DEL.BANKR.LR 9006-1(d) TO FILE REPLY IN SUPPORT OF ITS OBJECTIONS TO CERTAIN ASBESTOS PROPERTY DAMAGE CLAIMS

Owens Corning and Fibreboard Corporation, debtors and debtors-in-possession in

the above-captioned case (the "Debtors"), by and through their undersigned attorneys,

hereby move pursuant to Del.Bankr.LR 9006-1(d) for leave to file a Reply in Support of

their Objections to Certain Asbestos Property Damage Claims (the "Objections"), a copy

of which is attached hereto as Exhibit "A" and incorporated by reference herein.  In

support of the Objections, the Debtors respectfully represent as follows:

1.     On December 3, 2004, the Debtors filed, among others, the following

Objections to Asbestos Property Damage Claims:

- o   **Debtors' Objection to Asbestos Property Damage Claims of Garrison Public School District # 51 (claim #8783 and claim #8926) (Docket No. 13509);**

DKT. NO. 15054
DT. FILED 4/29/05

21901432v4

- Debtors' Objection to Asbestos Property Damage Claims of the State of North Dakota (claim #8774 and claim #8922) (Docket No. 13515); and

- Debtors' Objection to Asbestos Property Damage Claims of Kindred Public School District #2 (claim #8886) (Docket No. 13519).

A hearing on the Objections is currently scheduled for June 27, 2005 (the "Hearing").

2.      On March 4, 2005, claimants filed their First Supplemental Response to Debtors' Objections (the "Response"). In the Response, claimants raise issues of law and fact not addressed in the Debtors' Objections. In consideration of this Court's time, and in the interest of efficient resolution of these matters, the Debtors seek this Court's permission to reply to claimants' arguments against the Objections.

3.      In the proposed Reply, the Debtors briefly respond to the arguments raised for the first time in the Response.

4.      The Debtors submit that the contents of the limited Reply will assist the Court in analyzing the facts and law at issue in claimants' arguments against the Objections so that the Court can rule on the Objections at the Hearing.

A-121

2

21901432v4

WHEREFORE, Owens Corning and Fibreboard Corporation respectfully request that the Court enter an order (a) pursuant to Del.Bankr.LR 9006-1(d) permitting Owens Corning and Fibreboard Corporation to file the Reply; and (b) granting Owens Corning and Fibreboard Corporation such further relief as is just and proper.

Dated  April 29, 2005

SAUL EWING LLP

By: _Kate Stickles_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19899
(302) 421-6800

Counsel to Owens Corning, *et al.*

- and –

DEBEVOISE & PLIMPTON LLP
Mary Beth Hogan
Sean Mack
919 Third Avenue
New York, NY 10022
(212) 909-6000

Special Counsel for Debtors and
Debtors-in-Possession

A-122

3

EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| OWENS CORNING, *et al.*, | : | Case Nos. 00-3837 (JKF) |
| | : | |
| Debtors. | : | (Jointly Administered) |

Related to Docket Nos. 13509, 13515,
and 13519
Hearing Date: May 16, 2005 at 10:00 a.m.
Before the Honorable Judith K. Fitzgerald
U.S. Bankruptcy Court, 824 Market St.,
Wilmington, DE 19801

## DEBTORS' REPLY TO NORTH DAKOTA CLAIMANTS' RESPONSE TO OBJECTIONS TO CERTAIN ASBESTOS PROPERTY DAMAGE CLAIMS

Owens Corning ("OC") and Fibreboard Corporation ("Fibreboard"), debtors and

debtors-in-possession in the above-captioned case (the "Debtors"), by and through their

undersigned attorneys, hereby submit this Reply in further support of the Debtors'

Objections to Certain Asbestos Property Damage Claims (the "Objections"). In support

of the Objections, the Debtors respectfully represent as follows:

### Response of North Dakota Claimants to the Objections

1. In response to the Objections, Garrison Public School District #51, Kindred

Public School District #2, and the State of North Dakota (collectively, the "North Dakota

Claimants") argue that their claims should not be dismissed because: (i) their claims are

not barred by North Dakota Cent. Code § 28-01-47(2), which provides that any asbestos

property damage claim "must be commenced prior to August 1, 1997," because they

"believe" they can show that § 28-01-47(2) was intended to operate only as a revival

statute, extending the time by which plaintiffs could sue for already existing injuries, and

21901433v4

not to limit the rights of future plaintiffs to seek redress for injuries; and (2) based on the

*MDU Resources Group v. W.R. Grace & Co.*, 14 F.3d 1274 (8th Cir. 1994) case, there is

no evidence that they knew or should have known of any asbestos contamination in their

buildings which would trigger North Dakota's six year statute of limitations. These

arguments are wrong for three reasons: (1) North Dakota statute § 28-01-47(2) is clear on

its face and unambiguously prohibits all property damage claims from public buildings

after August 1, 1997; (2) the legislative history supports barring any claims by public

buildings after that date; and (3) the *MDU Resources* case is not applicable to owners of

public buildings.

### The Debtors' Reply

I.    North Dakota Cent. Code § 28-01-47(2) is unambiguous on its face.

2.    North Dakota Cent. Code § 28-01-47(2) is an unambiguous statute that

requires owners of public buildings to bring any action to recover costs for asbestos

property damage before August 1, 1997. It is fundamental that, when a statute is

unambiguous on its face, courts do not consult its legislative history to elucidate its

meaning. *See United States v. Oregon*, 366 U.S. 643, 648 (1961); *Arkansas Valley

Industries, Inc. v. Freeman*, 415 F.2d 713, 717 (8th Cir. 1969). The Supreme Court of

North Dakota adheres to this common principle of statutory construction: "If statutory

language is clear and unambiguous, the letter of the statute cannot be disregarded under

the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from

the face of the statute." *Hilton v. N.D. Educ. Ass'n*, 655 N.W.2d 60, 64 (2002). Because

A-125

2

there is no ambiguity in the language of § 28-01-47, the Court should not consult the

legislative history to interpret it, and should interpret it as written.

> 3.  The language of § 28-01-47 could not be more clear. The first section states:

> > The legislative assembly finds that it is in the interest of the
> > general public, particularly those persons who may bring
> > claims regarding materials containing asbestos in public
> > buildings and those against whom the claims may be
> > brought, to set a specific date by which public building
> > owners must bring a cause of action for removal or other
> > abatement costs associated with the presence of asbestos in
> > their buildings.

The second section states:

> > [A]ny action to recover costs for removal and replacement
> > of asbestos or materials containing asbestos from a public
> > building; to recover costs for other measures taken to
> > locate, correct, or ameliorate any problem related to
> > asbestos in a public building; or for reimbursement for
> > removal and replacement, correction, or amelioration of an
> > asbestos problem in a public building, must be commenced
> > prior to August 1, 1997.

The language of the statute unambiguously expresses its scope and purpose. The

legislature clearly expressed that it was in the interest of plaintiffs and defendants to set a

"specific date" by which actions "associated with the *presence* of asbestos" in public

buildings must be brought. No exemption is made for buildings with asbestos that has

not yet been discovered, or buildings with asbestos that is not friable, or any other

possible fact patterns: the statute plainly covers every possible claim regarding materials

containing asbestos in public buildings, and plainly states that all such claims must be

"commenced prior to August 1, 1997." Thus, the language of the statute allows only one

interpretation: asbestos property damage claims on behalf of owners of public buildings

3

had to be brought by August 1, 1997. Because the three North Dakota claims at issue all relate to public buildings, yet were not brought until 2002, they are barred.

II.    The North Dakota Legislature intended § 28-01-47(2) to apply to all present and future actions by owners of public buildings for asbestos property damage.

4.    The North Dakota Claimants assert that they "believe" they will be able to show, presumably through the legislative history, that the statute was designed merely to revive stale claims and not to establish an absolute bar date. As shown above, that is inconsistent with the plain reading of the statute. Even if the Court were to consult the legislative history of § 28-01-47, which it should not, that history unequivocally demonstrates that the North Dakota legislature passed this statute with the intent that: (1) it would promote public health by encouraging prompt discovery and abatement of asbestos problems in public buildings; (2) it would establish an absolute cutoff date for litigation by public entities over asbestos property damage claims; and (3) it would eliminate litigation over application of the "discovery" rule. Attached hereto as Exhibit A is a complete copy of the legislative history of § 28-01-47. During the hearings of both the House and Senate Industry Business Labor Committees, held on April 14 and 16, 1993, the legislature also specifically considered the impact of the bill on the State of North Dakota, as the largest owner of buildings in the state, and clearly stated the intent that the state must act promptly to address its asbestos problems. *See* Legislative History, Exhibit A. p. 17.

5.    Moreover, at these hearings, Douglas A. Bahr, assistant attorney general for the State of North Dakota, testified on behalf of the State of North Dakota in support of

4

the bill, and admitted that, if passed, the bill would impose an absolute deadline of August 1, 1997. *See* Legislative History, Exhibit A. p. 20. Mr. Bahr explained that the then-current statute of limitations was not triggered until the cause of action was discovered, and resulted in costly litigation over who knew, or should have known, about the asbestos, and when. According to Mr. Bahr, the bill eliminated this issue from litigation "by setting a specific date by which all such actions must be brought." *See* Legislative History, Exhibit A. p. 18. Mr. Bahr further explained that the bill "protects asbestos manufacturers from what would otherwise be virtually unlimited and perpetual exposure to civil actions. . . [I]t affords a reasonable period within which asbestos or asbestos containing materials can be removed from public buildings and suits brought to recover the cost of such removal." *See* Legislative History, Exhibit A. p. 19. As Mr. Bahr admitted, "[t]his bill gives the state a specific deadline by which to assess its asbestos problem and initiate legal proceedings . . . [A]fter August 1, 1997, any further litigation regarding asbestos removal would be barred." *See* Legislative History, Exhibit A. p. 20.

6.    The State of North Dakota's admissions during the hearings, the remaining legislative history, and the language of the statute make clear that the North Dakota legislature intended § 28-01-47 to place an absolute time limit on the filing of asbestos property damage claims by all owners of public buildings: August 1, 1997.

A-128

21901432v4

III.     Neither the *MDU Resources Group* case, nor any case cited by Claimants, has relevance to these claims.

7.     Contrary to the North Dakota Claimants' argument, *MDU Resources Group v. W.R. Grace & Co.*, 14 F.3d 1274 (8th Cir. 1994) does not control their claims.  The *MDU* case involved a private building, not a public one, and the Eighth Circuit did not interpret, or even mention, § 28-01-47.  Whereas just three months prior to deciding *MDU*, the Eighth Circuit decided *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717 (8th Cir. 1993), and held that a public building claim for asbestos property damages was not barred by the six-year statute of limitations because the recently enacted § 28-01-47(2) extended the limitations period in that case to August 1, 1997.  When that same court decided *MDU*, it made no mention of § 28-01-47(2), because that statute has no relevance to an action by the owner of a private building.  Likewise, *MDU* has no relevance where, as here, North Dakota public buildings are involved.[1]

---

[1]    Claimants' further arguments about the "accrual" theory based on case law from Missouri and California are misplaced because North Dakota law, not the law of another state, controls these claims.

A-129

6

21901432v4

<center>Conclusion</center>

WHEREFORE the Debtors respectfully request that the Court enter an order

disallowing and expunging each of the North Dakota Claims and for such further relief as

is just and proper.

Dated  April 29, 2005

<div style="margin-left:40%">

SAUL EWING LLP

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19899
(302) 421-6800

Counsel to Owens Corning, *et al.*

– and –

DEBEVOISE & PLIMPTON LLP
Mary Beth Hogan
Sean Mack
919 Third Avenue
New York, NY 10022
(212) 909-6000

Special Counsel for Debtors and
Debtors-in-Possession

</div>

<center>A-130</center>

<center>7</center>

# EXHIBIT "A"

North Dakota Century Code (current law)
    28-01-47. Limitation of action for asbestos claims.

1.  The legislative assembly finds that it is in the interest of the general public, particularly those persons who may bring claims regarding materials containing asbestos in public buildings and those against whom the claims may be brought, to set a specific date by which public building owners must bring a cause of action for removal or other abatement costs associated with the presence of asbestos in their buildings. By enactment of this statute of limitations, the legislative assembly does not imply that suits would otherwise be barred by an existing limitations period.

2.  Notwithstanding any other law to the contrary, any action to recover costs for removal and replacement of asbestos or materials containing asbestos from a public building; to recover costs for other measures taken to locate, correct, or ameliorate any problem related to asbestos in a public building; or for reimbursement for removal and replacement, correction, or amelioration of an asbestos problem in a public building, must be commenced prior to August 1, 1997. Any such action which would otherwise be barred before August 1, 1997, as a result of expiration of the applicable period of limitation, is revived or extended. An asbestos action revived or extended under this subsection must be commenced prior to August 1, 1997.

3.  For purposes of this section, "public building" means any building owned by any county, city, township, school district, park district, or any other unit of local government, the state or any agency, industry, institution, board, or department thereof.

Source: S.L. 1993, ch. 323, § 1.

© 2004 by the State of North Dakota and Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1993

# JUDICIAL PROCEDURE, CIVIL

## CHAPTER 323

SENATE BILL NO. 2542
(Senators H. Stenehjem, Maxson)
(Representatives Dorso, Mahoney)
(Approved by the Delayed Bills Committee)

### ASBESTOS CLAIM LIMITATIONS

AN ACT to create and enact a new section to chapter 28-01 of the North Dakota Century Code, relating to limitation of actions for certain asbestos claims by public building owners.

BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF NORTH DAKOTA:

SECTION 1.  A new section to chapter 28-01 of the North Dakota Century Code is created and enacted as follows:

Limitation of action for asbestos claims.

1. The legislative assembly finds that it is in the interest of the general public, particularly those persons who may bring claims regarding materials containing asbestos in public buildings and those against whom the claims may be brought, to set a specific date by which public building owners must bring a cause of action for removal or other abatement costs associated with the presence of asbestos in their buildings. By enactment of this statute of limitations, the legislative assembly does not imply that suits would otherwise be barred by an existing limitations period.

2. Notwithstanding any other law to the contrary, any action to recover costs for removal and replacement of asbestos or materials containing asbestos from a public building; to recover costs for other measures taken to locate, correct, or ameliorate any problem related to asbestos in a public building; or for reimbursement for removal and replacement, correction, or amelioration of an asbestos problem in a public building, must be commenced prior to August 1, 1997. Any such action which would otherwise be barred before August 1, 1997, as a result of expiration of the applicable period of limitation, is revived or extended. An asbestos action revived or extended under this subsection must be commenced prior to August 1, 1997.

3. For purposes of this section, "public building" means any building owned by any county, city, township, school district, park district, or any other unit of local government, the state or any agency, industry, institution, board, or department thereof.

Approved May 5, 1993
Filed May 6, 1993

A-133

2

(CONTINUED)

DIVIDED COMMITTEE REPORT, MINORITY A, AMEND, DP, MIN. 3   GLASSHEI     PAGE  291
DIVIDED COMMITTEE REPORT, MINORITY B, AMEND, DP, MIN. 2   DOBRINSK                HJ2004
Majority report adopted                                                          HJ2005
Second reading, failed, lacks const. majority yeas 049 nays 047                  HJ2005
Motion to reconsider failed                                                      HJ2006
                                                                                 HJ2006

SB 2542

Sen. W.Stenehjem, Maxson
Rep. Dorso, Mahoney

(Approved by the Delayed Bills Committee)
A BILL for an Act to create and enact a new section to chapter 28-01 of the North Dakota
Century Code, relating to limitation of actions for certain asbestos claims by public building
owners; and to declare an emergency.

04/13 Senate   Introduced, first reading, (emergency), referred Industry, Business and Labor
04/14 Senate   Reported back amended, amendment poc y 005 n 002              SJ1649
04/15 Senate   Amendment adopted, placed on calendar                        SJ1651
               Second reading, passed as amended, yeas 037 nays 011         SJ1651
               Emergency clause carried                                     SJ1651
04/15 House    Received from Senate                                         HJ1887
               Introduced, first reading, (emergency), referred Industry, Business and Labor
04/16 House    Reported back, do pass, placed on calendar y 009 n 004       HJ2007
04/16 House    Committee Hearing   08:30
04/19 House    Second reading, passed, yeas 057 nays 039                    HJ2013
               Emergency clause failed                                      HJ2013
04/22 Senate   Signed by President                                          SJ1722
04/27 House    Signed by Speaker                                            HJ2307
04/27 Senate   Sent to Governor                                             SJ1905
05/05 Senate   Signed by Governor                                          . SJ1907
05/06 Senate   Filed with Secretary of State

SB 2543

Sen. Robinson, DeMers, Holmberg, Kelly, Krebsbach, Nalewaja

(Approved by the Delayed Bills Committee)
A BILL for an Act to provide an appropriation for defraying the expenses of the North Dakota
university system and the various institutions of higher learning under the supervision of the
state board of higher education and to provide an exemption to the provisions of section
54-44.1-11.

04/20 Senate   Introduced, first reading                                    SJ1691
04/21 Senate   Reported back, do pass, placed on calendar y 012 n 000       SJ1720
04/22 Senate   Withdrawn from further consideration                         SJ1731

SCR4001

Legislative Council

(Interim Budget Committee on Government Administration)
A concurrent resolution expressing legislative support for the corps of North Dakota state
employees and expressing legislative purpose that the recruitment, training, and retention of
valuable state employees be given priority by each branch of state government.

01/05 Senate   Introduced, first reading, referred Government and Veterans Affairs    SJ  57
01/15 Senate   Committee Hearing   11:00
02/01 Senate   Reported back, do pass, placed on calendar y 007 n 000               SJ 287
02/03 Senate   Second reading, adopted                                              SJ 316
02/05 House    Received from Senate                                                 HJ 435
02/08 House    Introduced, first reading, referred Government and Veterans Affairs  HJ 497
03/05 House    Reported back, do pass, placed on consent calendar y 011 n 000       HJ 968
03/05 House    Committee Hearing   11:00
03/09 House    Second reading, adopted                                              HJ1004
03/11 Senate   Returned to Senate                                                   SJ 889
03/17 Senate   Signed by President                                                  SJ 983
03/19 House    Signed by Speaker                                                    HJ1264
03/19 Senate   Filed with Secretary of State

SCR4002

Legislative Council

(Interim Budget Committee on Government Services)
A concurrent resolution directing the Legislative Council to monitor the continued development
of a continuum of services for the mentally ill and chemically dependant, including changes in
the role of the State Hospital, expanded community services, and the development of
partnerships between the public and private sectors.

01/05 Senate   Introduced, first reading, referred Human Services                   SJ  57
01/13 Senate   Committee Hearing   09:00
02/14 Senate   Reported back, do pass, placed on consent calendar y 007 n 000       SJ 110
01/18 Senate   Second reading, passed, yeas 045 nays 000                            SJ 129
01/20 House    Received from Senate                                                 HJ 233
01/21 House    Introduced, first reading, referred Human Services                   HJ 249
03/02 House    Reported back, do pass, placed on consent calendar y 013 n 000       HJ 915
03/02 House    Committee Hearing   08:30
03/03 House    Second reading, adopted                                              HJ 925
03/05 Senate   Returned to Senate                                                   SJ 834
03/08 Senate   Signed by President                                                  SJ 853
03/10 House    Signed by Speaker                                                    HJ101(
03/10 Senate   Filed with Secretary of State   A-134

SCR4003

Legislative Council

3

38511.0100

Fifty-third
Legislative Assembly
of North Dakota

SENATE BILL NO. 2542

Introduced by

Senators W. Stenehjem, Maxson

Representatives Dorso, Mahoney

(Approved by the Delayed Bills Committee)

1  A BILL for an Act to create and enact a new section to chapter 28-01 of the
2  North Dakota Century Code, relating to limitation of actions for certain
3  asbestos claims by public building owners; and to declare an emergency.

4  BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF NORTH DAKOTA:

5      SECTION 1. A new section to chapter 28-01 of the North Dakota Century
6  Code is created and enacted as follows:
7      Limitation of action for asbestos claims.
8      1.  The legislative assembly finds that it is in the interest of the
9          general public, particularly those persons who may bring claims
10         regarding materials containing asbestos in public buildings and
11         those against whom the claims may be brought, to set a specific
12         date by which public building owners must bring a cause of action
13         for removal or other abatement costs associated with the presence
14         of asbestos in their buildings. By enactment of this statute of
15         limitations, the legislative assembly does not imply that suits
16         would otherwise be barred by an existing limitations period.
17     2.  Notwithstanding any other law to the contrary, any action to
18         recover costs for removal and replacement of asbestos or materials
19         containing asbestos from a public building; to recover costs for
20         other measures taken to locate, correct, or ameliorate any problem
21         related to asbestos in a state building; or for reimbursement for
22         removal and replacement, correction, or amelioration of an asbestos

A-135

Page No. 1

38511.0100

Fifty-third
Legislative Assembly

1       problem in a public building, must be commenced prior to August 1,
2       1997. Any such action which would otherwise be barred before
3       August 1, 1997, as a result of expiration of the applicable period
4       of limitation, is revived or extended. An asbestos action revived
5       or extended under this subsection must be commenced prior to
6       August 1, 1997.

7   3.  For purposes of this section, "public building" means any building
8       owned by any county, city, township, school district, park
9       district, or any other unit of local government, the state or any
10      agency, industry, institution, board, or department thereof.
11  SECTION 2. EMERGENCY. This Act is declared to be an emergency
12  measure.

A-136

Page No. 2

38511.0100

5

1993 SENATE STANDING COMMITTEE MINUTES

BILL/RESOLUTION NO. _____2542_____

Senate _____IBL_____ Committee

Subcommittee on _____

Conference Committee _____

Identify or
check where
appropriate

Original Hearing Date _____4-14-93_____

Subsequent Hearing Date _____

Tape Number _____1_____ /Side A __xx__    Meter @ 0-6054
                                  Side B _____

Committee Clerk Signature _____

Minutes:

The hearing was opened by the chair Sen. Langley. All members were present.
Wayne Stenhegem, senator from Dist. 42 testified in favor of the bill.
This bill is a revival and extension for asbestos and removal of the
asbestos. The difficulty of this bill  is that it applies only to govern-
ment owned building. This will put all agencies on notice to abate or
remove asbestos. The statute of limitations was to 6 years and this
creates a problem for government agencies. Opponents have appeared to
ex post facto the laws, they feel this may constitute special laws.
They have been litigated and rejected. This will eliminate a lot of
litigation. The abate at NDSU for their buildings is at $3 million.
I urge you to give this bill a favorable do pass.
Sen. Langley  Why the Aug. 1, 1997?
There will be two legislative sessions between now and then. They can
come to the legislature to get the funding necessary. After that time
it will be done. The companies will now have to deal with it.
Sen. Streibel   Can the 95 or 97 session prohibit that?
Do not know that that will happen.
Douglas Bahr, testimony attached.
Sen. Streibel  You said they have been sleeping on their rights, what
about the late introduction of this bill?
This bill was introduced earlier and was kill and then was revived.
This is a limited version that applies only to public property. If an
action has accrued it could follow astatute of repose.
Sen. Schoenwald  What is the cost of a study?
Another person available more qualified.
John Arnston, attorney from Fargo, testimony attached.
Sen. Streibel  Asbestos goes back 60 years, was there an awareness by
the companies that it was cancer producing?
The awareness began in 1970 was when it started. The reaction is that
why can you collect today and we want to make them take the material
out. They do become liable.
Sen. Mutch This is a certain type of cancer, any other material the
cause.
It is found alos in Turkey, the country, not the meat.
Gordon Ronsvey, architect from Grand Forks, testimony attached.

A-137

6

Senate IBL
SB 2542  4-14-93
Page 2

Sen. Langley  Who will check out buildings to see if we have asbestos?
(There was no response)
Opposition
Thomas Kelsh, lobbyist, WR Grace LCo. and Gypsum Co. Testimony attached.
Sen. Schoenwald   Asbestos problem is in a state building, how is that
better for anybody to leave it in there and not to do the study?
If it is not crumbling, leave it alone. The public schools tested and
took it out. Was probably more dangerous with the removal. Now the EPA
will do air quality study, if it is ok, do not do the removal.
Sen. Schoenwal  Why are you against the bill?
The industry I represent is opposed to any extension of the claims.
There is no objection to reasonable extensions.
Sen. Schoenwal  You represent the asbestos industry. Car cabs, tractor
cabs and other cab tops used asbestos?

I do not know, car manufacturers and tractor manufacturers since the
'70's have not used asbestos.
Sen. Schoenwal  Should we test the materials and find out?
Yes, they could.
Sen. Schoenwald    Justifiable in getting it removed?
Yes
Sen. Schoemwald Are the tests very expensive?
This bill is the position that forces all public building to do it.
Sen. Schoenwald  With the statute of limitations, how far out would you
like them extended.
The current law is effective, suits can be brought within 6 yeaars of
knowledge of the asbestos.
Sen. Mutch  This extends it ot 1997 and then 6 years after that?
'97 would be the end.
Sen. Langley  Has extensive research been done in these buildings?
The dept. of transportation in 1984, found out then during a "survey".
They had the "survey" to find out if they had asbestos used in construction.
It was then assumed asbestos was used in construction, they were  not
actually tested.
Sen. Mutch  Are many people dying from this exposure?
The vast majority of cases dealt  within the shipyard building on the
coast.
The hearing was cllosed by the chair, Sen. Langley.

A-138

SB 2342  Committee discussion
4-14-93  Senate IBL
Tape 1 Side B  Meter 1725-2420

Sen. Krebsbach  On Page 2, line 10 indicates this is limited to public
buildings. Many boards in the state that are not public buildings.
Sen. Schoenwald  Do they own any buildings, the state would be responsible
for?
Sen. Krebsbach  I do not know.
Sen. Schoenwald  My guess would be that most of them do not own the build-
ing, they may rent the space. If they do own the building, they need
to address the asbestos problem.
Sen. Mutch  We should maybe start an action to get the problem taken
care of. May be asbestos is not any great threat.
Motion was made for do pass. Motion carried.

Colleen Popella,
Clerk

A-139

38511.0101

PROPOSED AMENDMENTS TO SENATE BILL NO. 2542

Page 1, line 21, replace "state" with "public"

Renumber accordingly

A-140

Page No. 1                     38511.0101

9

1993 HOUSE STANDING COMMITTEE MINUTES

BILL/RESOLUTION NO. SB 2542

House ____ Industry Business Labor _____ Committee

Subcommittee on _____

Conference Committee _____              Identify or
                                                             check where
Original Hearing Date _____ 4/16/93                       appropriate

Subsequent Hearing Date _____

Tape Number _____ 1

                                    /Side A    X
                                     Side B _____          Meter # 40
Committee Clerk Signature _____

Minutes:

This bill relates to limitation of actions for certain asbestos
claims by the public building owners; and to declare an emergency.

Senator Wayne Stenehjem, District 46, Grand Forks, introduced the
bill.    The bill revises the the statute of limitation for related
disputes in the state of North Dakota. There are pluses and
minuses for both sides, with respect to this bill. What it will do
is revise and extend the statute of limitations. It will close that
asbestos removal from public buildings. It will close that statute
of limitations, close that litigation on August 1,1997. The bill
as it stands before you applies only to government owned buildings
does not apply to the private sector only those owned by the
government municipalities and political subdivisions. It does put
all of these agencies on notice that they have until that time to
bring their claims, the current law as it exists would require or
provide that claims for asbestos removal would run virtually
forever because the statute starts to run to six years after the
time the agency knew or should reasonably have known that there
was asbestos in those buildings. That's a particular problem for
government because the group that is in charge of the building
changes from time to time.    The membership of the board of higher
education, the members of the county commission, township, or
things of that nature change. It's very difficult to establish
exactly when a person or someone reasonably should have known,
because of the changing of the personnel. This is not unique
legislation to the state of North Dakota. this has been adopted in
numerous states. I should alert you that it was not without
opposition in the Senate, there were individuals that representing
the asbestos industry who opposed it, part of their claim was that
for various reasons, there are some constitutional problems with
respect to legislation. Those are boiled down basically to four
arguments first, that it proposes an ex post facto law, that it
violates due process or equal protection of the law and that this
kind of legislation constitutes professional law.
All of those claims have been litigated elsewhere on the same
kinds of legal principals, and with rare exceptions have been
upheld by the courts.

Page 2   SB 2542   House IBL   4/26/93

Stenehjem:  The estimates for removing asbestos from NDSU from the 74 buildings is $3,000,045, and the University of North Dakota estimates, where they have some two hundred buildings most of which have some asbestos  that will need to be removed or dealt with in one way or another, is estimated at $10 to $15 million dollars.  The issue really is who should be responsible for paying those costs, the taxpayer or the companies that made these materials.  This bill simply eliminates the technical argument, the defendant in these kinds of cases make the jury will still after a resolution of the problem of the statute of limitations still have to litigate whether the companies are responsible or not.

Stenson: How many public schools this would affect?

Stenehjem: This shouldn't affect public schools, they have been involved in litigation all over the country.

Pat Seaworth, NDUS, testified in support of this bill. One of the major benefits of this bill is that it will eliminate any questions concerning the statute of limitations on any of these actions that will be brought between now and 1997, one of the problems with litigation of this kind, the defendants one of the first things they do is they raise the statute of limitations, and argue that the claim should be dismissed because of the statute of limitations has lapsed. The second reason this bill will enable taspayers to recover some additional costs from the manufacturers for these asbestos problems that they wouldn't otherwise not be able to recover, therefore instead of the taxpayers paying these costs that will be incurred hopefully will be paid by others.

Keiser: Currently, as I understand it, if you find asbestos and you'll know about it, because if you want to do any renovation, the construction company, if they find asbestos they won't go in, until they come back from that board, and inform that board that we have a problem in here, and if it changes dramatically so it's not a matter of not knowing about it you're going to find out about it real fast here, you have six years to start litigation and if you win in the litigation, that company has to pay, as I understand it, if you don't take action in the six year period, then you're out of luck you've lost that window of opportunity. What this does is open that window back up for those people who chose not to take on the challenge earlier and get 100% funding if you prove there is asbestos in there.

Seaworth: You've raised several issues which I will respond to. first of all, it's unlikely that the owners abilities are going to pay one hundred percent of the costs, some of the manufacturers have declared bankuptcy. Secondly, a problem is that the state enitity simply have not had the time or the staff to conduct a thorough survey of all their building and to determine the extent of the asbestos problem within all the buildings.

A-142

11

Page 3 SB 2542   House IBL  :/16/93

Carlson: When did we first discover the asbestos problem?

Seaworth:  If I were to give you a short history, Arntson  may be
able to give you more information.

There were additional questions or discussion about the discovery
of asbestos in a building.

Jon Arnston, Private Attorney, Fargo, testified in support of this
bill.  Written testimony attached.

Tollefson:  When was it first determined that asbestos was
hazardous?

Arntson: The knowledge that was growing in the 60's into the 70's
and I think it became EPA banned in 1973.  The real push started
in the late 70's and early 80's when elementary and secondary
schools were required to inspect and test for asbestos.  That's .
when the knowledge started to come out to the public.

Tollefson: A lot of asbestos was installed way early, I can
remember in grade school, and believe me that's a long time ago,
looking at insulation on various heating pipes and ducts, which
was asbestos sprayed on, those installations if it wasn't
necessarily determined it was hazardous, say in the twenties,
thirties, whenever these were installed would these companies
still liable under a situation like this?

Arntson: No, if the company didn't know it was hazardous, they
wouldn't be held responsible. ,
The reason they are being held responsible is they had that
knowledge way back when and they actively suppressed it.

Tollefson: I'm wondering, we are all probably guilty sometime in
our lives for doing something that we didn't even know was
illegal, should someone making claim against us be able to go back
many years, and say that you are guilty and should be fined
accordingly?

Arntson: Certainly not, unless you were  negligent, unless you had
knowledge, that's one of the reason why in these lawsuits you do
not find the architect in suit, because they didn't have
knowledge, you don't see the contractors in suit, they didn't
know, you don't see the people that installed being sued, because
they didn't know.

Keiser: Has the EPA modified their standards?

Arntson: They've put out new materials, I don't know if their
position has changed so much, when it first came out in schools,
everybody was saying you have to pull this stuff out, and that may
not be the best solution, you should wait until there is a reason
to remove it and that might be because you want to renovate the
building. In an elementary school building it might be because the
kids are jumping up and scraping the ceiling, otherwise you should
try to manage it in place.

12

Page 4 SB 2542 ·   House IBL 4/16/93

Keiser: UND & NDSU have a hundred buildings on there campus, given the knowledge we have of asbestos and it's problems, I really have some trouble believing that those institutions have not sent their people in and looked at whether or not they have asbestos.  They have in all likelihood knowledge, I think I could take the engineering department from any of the campuses and put them under oath and say have you done an assessment of your facilities and if they haven't they should be fired and if they have, we know if there is asbestos and if we knew that, we should have taken action eight years ago.

Arntson: Whether they surveyed or not, the surveys that were conducted, what they did is they went through and looked at material, and they either assumed they had asbestos and in some instances they had tested because maybe they had disturbed it. For example at NDSU 74 out of 91 buildings they believe there is some form of asbestos maybe the thermal system insulation, some of it may be sprayed applied or something else. The question then goes, who makes the decision and it starts to get kind of murky as to who is responsible to go ahead to pursue action and what's to be done.  That's one of the problems the state has, as I mentioned certainly the manufacturers would argue that the state Health Department had knowledge early on because they were working with the schools, so maybe the statute should run from that point in time. We can say that maybe yes, they should have taken some action and I think that's a reasonable thing to say.

Keiser: Should we suggest an amendment for the year 2050, because then the state will never pay, we'll never have a liability.

Arnston:  The date varies, they're are two sections between now and 1997, actually, as far as I'm concerned the date could be removed. I think it does give something back to the manufacturer because the bill does say the action must be commenced before August 1,1997. The way the bill is written that's a closure.

Berstein: Is  this Mesothelioma attributed only to asbestos?

Arnston: There is suspected another cause, there is some chemical in the country of Turkey.

Soukup: Have you ever handled cases where the state is attempting to sell a building and there is asbestos, can you walk me through the scenario of what could happen or what is happening.

Arnston: Not with the state but I have been involved in other instances, one was where there was default on a loan on a building that had asbestos on it and the bank won't touch it. They won't foreclose they don't want their name in the change title. It's a real problem.

Soukup: In other words, let's say the State Hospital is going to sell one of the buildings, whose responsibility to remove that?

A-144

Arnston: The state, a phase one envoirnmental audit would be made, phase two would determine the amount of the asbestos, then the buyer would require that it be reomved prior.

`Page 5 SB 2542  House IBL  4/16/93

Jacobs: As an official and we know we have asbestos in the court
house, would we be liable after this date?

Arnston: Well, you have to use your good judgement as to whether
you think it's worth pursuing the cause of action, and I suppose
if you were somehow negligent in your duties you could be
responsible with official limits.  I think that you have to weigh
and make your own judgement.

Douglas A. Bahr, Assistant Attorney General, testified in support
of this bill.  Written testimony attached.

Thomas D Kelsch, US Gupsum and WR Grace, testified in opposition
to this bill.
Written testimony attached.

Dorso: When you start taking about public officials who come and
go at the will of the voters, what is your answer to that?  The
fact is that there could have been somebody like in Representative
Jacobs' case that was notified and that knew, lost an election and
isn't there, this could go on forever and then I can see you guys
playing lots of games in the courts for the next twenty years over
those types of deals.

Kelsch: First of all, the statute of limitations is an affirmative
defense, which means that the defendant has to prove the knowledge
or notice to the public agency. They would have to try to dig up
the people who would know, not assume that they know, the knowledge
would have to be proven by the defense.  Secondly, those factual
questions ask who knew what, would be a question for the jury to
decide. I'm aware of one build ng where it was kicked out on the
statute of limitations questi ns, that was MDU where they did do a
study determined there was as estos and they didn't sue for ten
years after that study.

Dorso: MDU they have no elections, I'm assuming the people that
are there and the people that built the building, whatever, I'm
talking Representative Jacobs gets elected in 1989 and gets
unelected in 1993 and he happened to be the one that was holding
that portfolio and he's history. Now what are we going to do?
What I'm saying is  then we're open for litigation again. I can
see one solution to this send a big bright notice to every
political subdivision in the state that owns a building and say
folks you're all in this deal, and the statute of limitations is
running right now, six years.

Kelsch:  Then what they would have to do is they would have to
study every building that they have, and spend the cost to do
that, then hire somebody and commence the suit within four years.

Dorso: What's the difference if we put it in the Century Code and
say the same thing? They are all public officials and they all
should be notified by their legal counsel of what's been done in
the legislative body to them, somebody said we should probably go
home before we get into these. Don't you think we have to bring
this to an end at least in public buildings?

14

Page 6 SB 2542  House IBL  4/16/93



Dorso: Basically your argument is that, what you want to do, if we are talking about present value dollars, the companies would rather see this spread out over the next thirty or forty years than have the whole get after you real quick.

Kelsch: As in the testimony before there are a lot of companies who have gone out business, and yes we would rather not have all the suits on every public building in the state sued and settled within the next four or five years.

Mahoney: Article one section eighteen of the constitution, doesn't that apply to contracts cases and aren't these asbestos suits aren't they a part of liability tort cases?

Kelsch: They are brought under about every theory that you could come up with, some are brought under contractor warranty theories, some are brought under tort theories, basically they throw in every potential argument.

Coats: Are there qualified asbestos inspectors common in the state of North Dakota?

Kelsch: I believe there are some architectial  firms that do go in and test for asbestos.



Thorpe: On the average do you have knowledge of some suits that have been litigated, how do the litigants come out after paying the fees, do they come with sizable dollars?

Dorso: It's not a windfall, you don't get damages, just the cost of removal or encapsulation.

Ken Wangler, ND Health Department, testified in support of this bill.
To address Representative Coats question, there are 55 contractors licensed and about 1/3 have asbestos inspectors on staff.

Chairman Dorso called for additional testimony, seeing none closed the hearing.


Committee Action  4/16/93
Representative Keiser moved amendments.
Representative Jacobs seconded the motion.
The motion failed.

Representative Thorpe made a motion for a Do Pass.
Representative Stenson seconded the motion.

9 Yes; 4 No; 2 Absent;
Representative Mahoney was given the floor assignment.
A-146

4-14-93
Senate 13L

### TESTIMONY OF DOUGLAS A. BAHR
### ON
### SENATE BILL NO. 2542

Mr. Chairman, members of the Committee, I am Douglas A. Bahr, assistant attorney general, testifying on behalf of the Attorney General in support of Senate Bill 2542.

Senate Bill 2542 extends the statute of limitations for actions against manufacturers of asbestos containing materials for removal of asbestos from public buildings.  The Bill also revives any actions for removal of asbestos from public buildings which may be barred by the statute of limitations.  The Bill serves the interest of the citizens of the State of North Dakota by encouraging prompt removal of this health hazard from public buildings while at the same time permitting the State of North Dakota and other entities to recoup the expense of removing the asbestos from public buildings.

The health and safety of the citizens of North Dakota is an important concern of the Legislature.  Senate Bill 2542 recognizes that asbestos in public buildings poses a significant health hazard to North Dakota citizens that should be promptly corrected. Allowing building owners who correct asbestos problems in public buildings to seek reimbursement against others who may be more directly responsible for the problem encourages removal of the health hazard.  Further, requiring that any action to recover the cost for removal of materials containing asbestos from a public building be brought before August 1, 1997, encourages prompt

A-147

16



correction of the dangers presented by the asbestos. Thus, the Bill protects the health and safety of North Dakota citizens by encouraging prompt removal of asbestos containing materials by permitting building owners to seek reimbursement from the manufacturers of the asbestos materials if an action is brought prior to August 1, 1997.

Senate Bill 2542 also protects the public treasury against the monumental cost of removing and replacing asbestos in public buildings. The building owner with the greatest number of public buildings containing asbestos in North Dakota is the State of North Dakota. Asbestos containing materials will need to be removed from state buildings under containment if the materials will be disturbed upon renovation or remodeling, if deterioration necessitates removal, or if a building is demolished. Removal under containment is an expensive procedure. Either the taxpayers of this state or the manufacturers of the asbestos will have to pay to have the asbestos removed from state buildings. This Bill gives the state a specific deadline by which to assess its asbestos problem and initiate legal proceedings to place the cost of removing this serious health hazard upon the manufacturers rather than the taxpayers.

If the state brings an action to recover for removal of asbestos or materials containing asbestos at this time, asbestos manufacturers will most likely attempt to defend the action by the technical defense of statute of limitations. The statute of limitations

A-148



which would most likely apply to this type of action  would not
begin to run until the "building owner" knew or reasonably should
have known of the asbestos material and its health hazard.  This is
called the "discovery rule."  The matter of when a public entity
knew or reasonably should have known that a particular wrong had
been committed is complicated because the person whose knowledge is
controlling may not be readily identifiable.  Numerous officials
may have served in different capacities over different periods of
times with varying degrees of knowledge regarding the presence of
asbestos and its health hazards.  Thus, a substantial amount of
state time and resources will be spent in trial over the issue of
when the state became aware or reasonably should have become aware
of the asbestos material and its health hazards.  Senate Bill 2542
removes this issue from litigation by setting a specific date by
which all such actions must be brought.

One of the reasons the Office of Attorney General and state
agencies have not brought actions against asbestos manufacturers to
date is that the Legislature has not appropriated funds to the
Office of Attorney General or to state agencies to bring such
actions.  The Bill under consideration sets a specific date in
which state agencies must assess the extent of their asbestos
problem and seek the necessary appropriation to solve the problem
and bring an action against the responsible asbestos manufacturers.
Absent passage of this Bill, the substantial cost of removing

3
A-149



asbestos from state buildings will be placed upon the taxpayers rather than the responsible manufacturers.

In addition, Senate Bill 2542 also protects asbestos manufacturers from what would otherwise be virtually unlimited and perpetual exposure to civil actions. The Bill bars any action to recover for removal of asbestos or materials containing asbestos from a public building unless the action is brought before August 1, 1997. Thus, the Bill limits what would otherwise be virtually unlimited and perpetual exposure to liability for asbestos manufacturers without eliminating liability entirely; it affords a reasonable period within which asbestos or asbestos containing materials can be removed from public buildings and suits brought to recover the cost of such removal.

Enactment of the Bill will also not create additional litigation by the State of North Dakota. Most asbestos cases settle rather than go to trial. When manufacturers do successfully defend asbestos cases, it is usually because they can utilize the statute of limitations or another technical defense. The major issue of the trial thus becomes when the building owner became aware of or reasonably should have become aware of the asbestos material and its health hazards. Enactment of the Bill removes this time consuming portion of a trial by setting a specific date by which public building owners must bring actions against asbestos manufacturers. Because this issue would be removed, it is more

4

A-150



likely that asbestos actions would be settled. Even if the actions do go to trial, the trial will be limited to the issue of liability of the asbestos manufacturer, substantially reducing the time and judicial resources exhausted through the trial. The amount of litigation would also be reduced because after August 1, 1997, any further litigation regarding asbestos removal would be barred.

Because there are no manufacturers of asbestos containing materials in the State of North Dakota, this Bill will not adversely affect any company or entity in North Dakota. It is believed that the Bill will have a positive effect on North Dakota citizens and taxpayers, encouraging prompt removal of asbestos from public buildings while permitting public building owners to seek reimbursement for the cost of removing asbestos against the responsible asbestos manufacturers.

With regard to the constitutionality of Senate Bill 2542, numerous courts have addressed and upheld the constitutionality of statutes extending and reviving actions by building owners against manufacturers of asbestos containing materials. The one court that addressed the constitutionality of a statute similar to the Bill, extending and reviving actions with regard to public buildings, found the statute to be constitutional. See <u>City of Boston v. Keene Corp.</u>, 547 N.E.2d 328 (Mass. 1989). Those courts' findings, as well as numerous North Dakota Supreme Court decisions, provide support for the constitutionality of Senate Bill 2542.

<div align="center">5   A-151</div>

Thomas D Reisn
SB2342
4-14-93
Sen. 13L

2542
SB #2301 - COMMENTS

I.    What the Bill Does:

SB 2301 does two things:

A.    It extends the current Statute of Limitations to August
      1, 1997.  The current Statute of Limitations is six
      years from the date when the owner of property knew or
      should have known of facts giving rise to cause of
      action.

B.    It revives all actions that are barred from the
      beginning of time.

II.   Constitutional Problems:

Statutes of Limitation bar an action once time is passed and a
defendant has a vested right to rely on the statute as a defense.
The defense becomes a vested property right which cannot be taken
away by legislation.  (51 Am. Jur. 2d, Limitations of Action §44)

SB 2301 Would Violate North Dakota Constitution:

A.    Art. I, §18 - Ex Post Facto Law Provides That:

      "No bill of attainder, ex post facto law, or law
      impairing the obligations of contracts shall ever be
      passed."

      An Ex Post Facto Law is defined as: "A law passed after
      the occurrence of a fact or commission of an act, which
      retrospectively changes the legal consequences or
      relations of such fact or deed."  (Black's Law
      Dictionary, 5th Ed.)

      SB 2301 revives actions that are time barred, it changes the
      legal relation between the building owner and the asbestos
      manufacturer after the fact.  In doing this, it is a
      constitutionally prohibited ex post facto law.

B.    Art. I, §12 - Due Process Provides That:

      "No person shall . . . be deprived of life, liberty or
      property without due process of law."

      The barring of an action because of the passage of time
      becomes a property right upon which we all rely.  To revive
      a barred cause of action deprives a defendant of that
      property right without due process.

1 A-152

21

C.    Art. I, §21 - Equal Protection Provides That:

"... Nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

By reviving barred causes of action for asbestos damage, SB 2301 grants a privilege to only certain citizens. Others whose actions are barred get no such privilege and they are thereby denied equal protection of the law. SB 2301 discriminates against one class of manufacturers and operators to single out one special interest group.

III. SB 2301 Is Against Public Interest

A.    SB 2301 does violence to long-standing public policy embodied in Statutes of Limitation. The public policy reasons for Statutes of Limitation are:

1.    To place a time limit on liability exposure;

2.    To discourage plaintiffs from sleeping on their rights;

3.    To require action be brought while evidence is still fresh and available, and memories have not faded or witnesses deceased; and

4.    To unburden the Courts from stale claims where, through the lapse of time, evidence concerning the true facts has been lost or difficult to prove.

B.    Opens a Pandora's Box. If this legislature revives and extends asbestos actions, what reason can be advanced for not reviving all barred actions, such as suits for debt which are barred in six years; claims against an estate which are barred in 90 days after publication of a notice to creditors; and wrongful death actions which are barred in two years.

C.    Anti Business. We are all working hard to encourage businesses and manufacturers to locate in North Dakota. This bill sends a fearful message by undoing our efforts at tort reform. Whatever the limitations on a tort may be, it is essential that that limitation has meaning. If our legislature lifts the time bar to the detriment of one group, who will be next. No business looking to come into North Dakota will be able to rely on any Statute of Limitations in North Dakota.

IV. SB 2301 - Not Needed

A.    Suits Have Already Been Brought. As far back as 1983, EPA

2 A-153

22

advised schools in North Dakota about the hazard of
asbestos. This hazard has been common knowledge for about
10 years. Responsible persons have checked this out and a
number of lawsuits have been brought. In 1985, a class
action lawsuit was filed on behalf of all schools. Schools
would not be affected by this bill because they have already
brought their suits.

B.  Current Statute of Limitations Sufficient. Our current
Statute of Limitations on asbestos claims, is six years from
the date upon which the owner of the property knew or should
have known of facts giving rise to the cause of action
(28.01-02(5)). This Legislature passed this limitation as
an emergency measure in 1985 (SL 1985, Ch. 344). Building
owners who knew or should have known that asbestos was a
problem for their building have had all the intervening
years to act.

C.  Innocent Building Owner Already Protected. If there is
someone around who doesn't know or doesn't have knowledge of
facts that would cause them to know of an asbestos problem,
the six-year statute will not have begun to run against
their claim. SB 2301 would not affect these claims.

妥え だえれ
4-14-93
Senate 181

# AEC, P.C.

**A R C H I T E C T U R A L    C O N S U L T A N T S**

ARNOLD LEWIS HANSON, AIA
533 AIRPORT ROAD, PO BOX 2755, BISMARCK, ND 58502
701-224-0663                    FAX: 701-224-1209

GORDON L. ROSBY, AIA
211 NORTH FIFTH STREET, GRAND FORKS, ND 58203
701-775-2468                    FAX: 701-775-2632

SUBJECT:       Testimony in support of Senate Bill 2291 2542

DATE:          Thursday, February 11, 1993

NAME:          Gordon L. Rosby

ADDRESS:       1015 North 39th St. H-31
               Grand Forks, North Dakota 58203

OCCUPATION:    Architect

As an Architect with extensive asbestos experience, I wish to offer the following testimony in support of this bill.

First, I believe the general public as a whole has heard and knows asbestos is dangerous. Most know asbestos occurs on boilers, pipe insulation, and vinyl asbestos floor tile. When you get beyond that basic knowledge, the general public knows very little about asbestos. Likewise, even among the building industry (architects, engineers, contractors, facility managers maintenance personnel, etc.), the level of knowledge is equivalent to that of the general public. The exemption are those who have had asbestos training. Very few individuals in the construction industry have had asbestos training. Those with asbestos training include:

- A very small minority of Architects and Engineers who chose to make asbestos a part of their professional responsibility.

- Asbestos abatement specialty contractors of which there are only a few based in North Dakota.

- Asbestos testing and air monitoring firms of which there are a couple based in North Dakota.

- Maintenance and custodial staff of concerned owners, primarily school districts mandated by AHERA to manage asbestos in schools.

Most building owners (including the State of North Dakota) today do not know whether they have or do not have asbestos in their buildings (except for pipe insulation, boiler insulation, and vinyl asbestos floor tile). Even the experts do not know for sure until the suspect material is tested. Owners must have an asbestos survey/inspection completed or suspect a particular material as asbestos containing and have that material tested to know if their building contains asbestos. Asbestos materials can occur in a multitude of products such as,

- wall and ceiling plaster
- gypsum board/mud at taped joints
- fire proofing
- wall and ceiling texturing
- acoustical ceiling tile

to name a few.

Asbestos Containing Materials (ACM) may be friable or non-friable. Friable means that the material, when dry, may be crumbled, pulverized, or reduced to powder by hand pressure. Friable ACM (or ACM which becomes friable) must be removed under containment prior to renovation or demolition of a building. This is a very expensive procedure requiring work area enclosures constructed of polyethylene, decontamination units, full body protection for workers, respiratory protection for workers and filtered air systems to maintain a negative pressure within the containment. Full time air monitoring is also used to satisfy owner concerns about asbestos fibers not escaping the containment. All of these costs are borne by the building owner unless costs can be recovered from the asbestos manufacturers.

Asbestos manufacturers have known of the health effects for many years. In most cases, health effects have a latency period of 10 to 40 years after exposure. To my knowledge, there has been no effort on the part of the asbestos manufacturers to notify building owners where their asbestos products were used in specific buildings.

My point is simple. First you have owners and a construction industry that remains basicly unaware. Second, health effects relating to asbestos exposure from building products may not surface for 10 to 40 years after exposure. The discovery process cannot occur until health problems develop or the owner suspects a specific material may contain asbestos. This Senate Bill 2391 would give the building owner more time to determine whether they have asbestos.

A542

A-156

25

SB 2542
4-14-93
Senate 1 BL

Good Morning. I am Jon Arntson, an attorney from Fargo. I am here to support Senate Bill No. 2542. I first became involved with asbestos in buildings on behalf of school districts in North Dakota. Along with my associates I have represented numerous school districts in litigation against manufacturers of asbestos containing materials. We settled or received a jury verdict for each school district. We also represent other building owners in litigation against manufacturers including cities, colleges and private building owners.

The federal government, through the EPA, first directed its attention to asbestos in elementary and secondary schools in this country. It did so because the latency period for asbestos disease can be 30, 40 or 50 years. I currently represent the husband of a woman who worked in the shipyards during World War II. She died last year from mesothelioma, a cancer of the lining surrounding the lung caused by asbestos. Her work in the ship yard, almost 50 years ago, was to wrap cloth around the asbestos pipe insulation in the ships.

I also represented the widow of a North Dakota teacher whose only known exposure to asbestos occurred in the school building in which he taught for about 30 years. He too died from mesothelioma.

Asbestos is not one of those substances that is over regulated by the government. In fact asbestos is so dangerous it was the very first hazardous substance regulated by the EPA when it was created in the 1970's. To emphasize this point, the survival rate from mesothelioma is zero. There is no cure.

Although I will not read it to you, I want to incorporate into my testimony a paper entitled "Mesothelioma Among Employees in Public Buildings" by Dr. Henry A. Anderson and others. Dr. Anderson is with the Wisconsin Division of Health in Madison, Wisconsin and a Professor with the Wisconsin Medical School. He has researched asbestos related diseases for many years. The paper was presented at the Collegium Ramazzini Conference "The Third Wave of Asbestos Disease: Exposure to Asbestos in Place. Public Health Control" June 7-9, 1990 in New York.

Because of the lengthy latency period associated with asbestos disease the school children of this country are particularly at risk of developing asbestos related diseases. Congress recognized this risk when it passed the Asbestos School Hazard Detection and Control Act (20 U.S.C. Sec 3601, et. seq.) and found that school children may be particularly vulnerable to environmentally induced cancer and other fatal diseases; that here is no safe threshold level for exposure to asbestos; and that the presence of friable asbestos materials in schools creates an unwarranted hazard for school children and school employees. Congress reaffirmed these findings 4 years later when it passed the Asbestos School Hazard Abatement Act (20 U.S.C. Sec 4001 et.seq.).

For this reason EPA first directed its attention to the elementary and secondary schools in this country. Although all asbestos containing materials were subject to regulation special requirements were placed on the schools for inspecting for and responding to the presence of asbestos in buildings. For the past couple of years the EPA has been considering further

A-157

26



regulation of asbestos in other public buildings. What will come of this study remains to be seen. The manufacturers both individually and through their organization, the Safe Building Alliance, continue to fight the EPA in its regulation of asbestos.

If, as Congress found, school employees and students are at risk it seems logical employees and occupants of other public buildings are also at risk.

There are certain facts about asbestos that are not in dispute:

1. Asbestos is a carcinogen. It causes cancer. Cancer of the lungs, the pleura or lining of the lungs, stomach cancer and other diseases.

2. Generally speaking the asbestos industry was aware in the 1930's that asbestos caused cancer and there was no known safe level of exposure to to asbestos. The industries knowledge of the asbestos hazard increased over the years and this knowledge was kept from the public by the industry.

3. While the asbestos remains in place it must be managed so it is not disturbed and it usually restricts the building owners use of its building space. At the very least it creates an added expense to the building owner as long as it remains in place, and more importantly, a potential health hazard to the occupants of the building.

4. At some point most asbestos containing materials must be removed from buildings through an expensive abatement procedure. It must be removed if: 3 square feet or more of the asbestos containing material will be disturbed during renovation; when it deteriorates; or at, the latest before demolition of the building.

So the question is not "whether" building owners will spend money to abate asbestos in their buildings, but rather, "who" will pay for the abatement. Should it be the building owner or the manufacture? In the case of public buildings, should it be the tax payers or the manufacturers?

I am not here today to make a case against the manufacturers as to why they are liable nor does this bill ask the legislature to make that determination. The bill, if adopted, would permit a jury, upon hearing all the facts in a particular case, to answer the question of who will pay. Without the passage of the bill the question of who should be liable for the cost of abating asbestos containing materials in public buildings may never reach a North Dakota jury.

The bill relates to public health and safety and promotes the good and welfare of the citizens of North Dakota. It applies to all governmental entities including the state and its agencies, all counties and cities, the colleges and universities, public housing authorities and all other political subdivisions of the state. The benefit will extend to all public buildings in the state. It would allow those responsible to pursue claims for removing asbestos in college dormitories, class rooms, state and city office buildings and all other public buildings.

It is a legitimate legislative goal to protect the public treasury against the monumental cost of removing and replacing asbestos in public buildings.

Currently the applicable statute of limitations starts to run from the time the plaintiff knew or reasonably should have known of facts giving rise to its cause of action. The matter of when a public entity knew or reasonably should have known that a particular wrong had been committed is complicated because the person whose knowledge is controlling may not be readily identifiable. For example, the State Health Department worked with school districts in the early 1980's to help them comply with EPA regulations requiring inspection and the development of management plans for asbestos. The manufacturers will argue the specialized knowledge of the Health Department about the asbestos hazard should be imputed to any state agency or even the colleges and universities. In a case we now have pending the manufacturers have argued that the owners knowledge of asbestos in one building means it had knowledge of asbestos in all its buildings. No doubt such an argument would be made against the state.

As you know the bill not only sets a date by which asbestos litigation may be commenced by public entities but it also revives barred asbestos related claims of public entities. The right at issue is the ability of asbestos manufacturers to avoid claims by public entities by arguing that the statute of limitations has run. The running of the statute of limitations is not a vested right which cannot be changed by the legislature. The statute of limitations is merely a procedural bar which bars the legal remedy while leaving the underlying cause of action unaffected.

At common law a statute of limitations does not run against state entities. Sec 28-01-23 of the North Dakota Century Code provides that limitation periods shall apply to the state. Thus it is only because of legislative action the statute of limitation's time bar applies to public buildings and the Legislature can change the limitation period. The manufacturers have no vested right in the time bar.

This bill does no more than remove a procedural defense upon which the manufacturers might otherwise rely. It does not determine that any manufacturer will be found liable for any asbestos removal and replacement costs. It merely opens our courts to public entities for adjudication of that issue.

The bill will not adversely affect any company or entity in North Dakota as there are no manufacturers of asbestos containing materials in North Dakota.

I ask for your support of S.B. No. 2542.

A-159

28