
Westlaw.

44 Cal.Rptr.2d 305

Page 1

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

▷

Court of Appeal, First District, Division 4,
California.
SAN FRANCISCO UNIFIED SCHOOL
DISTRICT, Plaintiff and Appellant,
v.
W.R. GRACE & COMPANY-CONNECTICUT,
Defendant and Respondent.
No. A064739.

Aug. 21, 1995.
Review Denied Dec. 14, 1995.

School district brought asbestos-in-building action against asbestos manufacturer, and manufacturer moved for summary judgment. The Superior Court, Sonoma County, No. SCV183659, Laurence K. Sawyer, J., granted motion on basis that action was time barred by statute of limitations, and school district appealed. The Court of Appeal, Reardon, J., held that: (1) application of wrong law regarding when action accrued required remand; (2) limitations period was tolled while school district was party to federal class action against asbestos manufacturers; and (3) district's removal of asbestos from its buildings was motivated by duty to remove any health hazard, and so was not bad faith destruction of evidence as would render tolling of statute of limitations inequitable.

Reversed and remanded.

West Headnotes

**[1] Limitation of Actions** ☞199(1)
241k199(1) Most Cited Cases
Resolution of statute of limitations defense is typically factual question for trier of fact, however, summary judgment is proper if court can draw only one legitimate inference from uncontradicted

evidence about limitations issue.

**[2] Limitation of Actions** ☞55(1)
241k55(1) Most Cited Cases
In tort actions, statute of limitations commences when last element essential to cause of action occurs.

**[3] Limitation of Actions** ☞55(1)
241k55(1) Most Cited Cases
Statute of limitations does not begin to run and no cause of action accrues in tort action until damage has occurred.

**[4] Limitation of Actions** ☞95(1.5)
241k95(1.5) Most Cited Cases
If last element of cause of action to occur is damage, statute of limitations begins to run on occurrence of appreciable and actual harm, however uncertain in amount, that consists of more than nominal damages.

**[5] Limitation of Actions** ☞95(1.5)
241k95(1.5) Most Cited Cases
Mere breach of duty, causing only nominal damages, speculative harm or threat of future harm not yet realized, normally does not suffice to create cause of action, and so does not begin running of statute of limitations in tort action.

**[6] Limitation of Actions** ☞95(1)
241k95(1) Most Cited Cases
Under discovery rule, cause of action does not accrue until plaintiff either discovers injury and its negligent cause, or could have discovered injury and cause through exercise of reasonable diligence, and so statute of limitations begins to run when plaintiff suspects or should suspect that his or her injury was caused by wrongdoing, that is, when plaintiff has notice of information or circumstances that would put reasonable person on inquiry.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 Cal.Rptr.2d 305                                                                                    Page 2

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

**(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)**

[7] Negligence ☜463
272k463 Most Cited Cases
(Formerly 372k463, 272k103)

[7] Products Liability ☜17.1
313Ak17.1 Most Cited Cases
Until physical injury occurs, that is, until damage rises above level of mere economic loss, plaintiff cannot state cause of action for strict liability or negligence.

[8] Limitation of Actions ☜55(1)
241k55(1) Most Cited Cases

[8] Limitation of Actions ☜55(2)
241k55(2) Most Cited Cases
Physical    injury    resulting    from    asbestos contamination, not mere presence of asbestos, must have occurred before cause of action for strict liability    or    negligence    can    accrue    in asbestos-in-building case and limitations period commences.

[9] Limitation of Actions ☜95(1.5)
241k95(1.5) Most Cited Cases
Neither uncertainty as to amount of damages nor difficulty in proving damages tolls limitations period for bringing tort actions.

[10] Torts ☜117
379k117 Most Cited Cases
(Formerly 379k5)
"Injury" in tort action refers to damaging effect of wrongful act, not act itself.

[11] Limitation of Actions ☜126.5
241k126.5 Most Cited Cases
Limitations period for school district to bring asbestos-in-building    action    against    asbestos manufacturer was tolled while school district was party to federal class action against asbestos manufacturers, since class action gave asbestos manufacturer sufficient notice of claim; class action raised same issues affecting same subject matter as individual claim by school district, and members could be identified through public contracts for purchase and installation of building materials

containing asbestos.

[12] Limitation of Actions ☜126.5
241k126.5 Most Cited Cases
Plaintiff who opts out of federal class action is entitled to have limitations period for bringing individual action tolled during time when it was member of class.

[13] Limitation of Actions ☜104.5
241k104.5 Most Cited Cases
(Formerly 241k1041/2)
Application of doctrine of equitable tolling of statutes of limitations requires lack of prejudice to defendant and good faith conduct on part of plaintiff.

[14] Limitation of Actions ☜104.5
241k104.5 Most Cited Cases
(Formerly 241k1041/2)
School district's removal of asbestos from its buildings was motivated by duty to remove any health hazard to students, employees, and visitors, and so was not bad faith destruction of evidence in asbestos-in-building action as would render tolling of statute of limitations for bringing action inequitable.
**306 *1322 Speights & Runyan, C. Alan Runyan, Hampton, SC, Law Offices of Thomas J. Brandi, Thomas J. Brandi, Mylene L. Reuvekamp, San Francisco, Daniel U. Smith, Kentfield, for appellant.

George A. Manfredi, David T. Biderman, Stacy Allen, Perkins Coie, Los Angeles, for respondent.

REARDON, Associate Justice.

When    a    building    is    constructed    with asbestos-containing materials, does a property owner's cause of action for strict liability or negligence accrue on the owner's discovery of the mere presence of asbestos in the building or when asbestos contamination occurs? In this case, we hold--consistent with the vast majority of other jurisdictions that have considered this issue--that the owner of a building containing asbestos cannot state a cause of action in tort against an asbestos

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 Cal.Rptr.2d 305                                                                                    Page 3

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal
D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

manufacturer until contamination occurs. Thus, the
statute of limitations in an asbestos-in-building case
does not commence until there has been damage in
the form of contamination.

In our case, respondent W.R. Grace &
Company-Connecticut (Grace) obtained a summary
judgment and dismissal of an asbestos-in-building
action filed by appellant San Francisco Unified
School District (SFUSD). The trial court denied
SFUSD's motion for reconsideration of its
conclusion that the action was barred by the statute
of limitations. On appeal from both rulings, [FN1]
**307 SFUSD contends (1) that the trial court erred
in finding that the limitations period commenced on
discovery of the mere presence of asbestos *1323 in
its buildings; (2) the limitations period was tolled
during the period in which it was a member of a
federal asbestos class action; and (3) when properly
requiring contamination before accrual of this
asbestos-in-building action, a triable issue of fact
existed about when the limitations period
commenced. As we agree with SFUSD's claims,
we reverse and remand the judgment.

> FN1. SFUSD appeals both the order
> granting summary judgment and the order
> denying reconsideration of the order
> granting summary judgment. An order
> granting summary judgment is not an
> appealable order. (*Islander Yachts, Inc. v.
> One Freeport 36-Foot Vessel* (1985) 173
> Cal.App.3d 1081, 1086 fn. 6, 219
> Cal.Rptr. 654.) However, as the order
> granting summary judgment also purports
> to constitute a judgment, we will construe
> this aspect of the appeal to be one from the
> judgment, which is appealable. (See Code
> Civ.Proc., § 904.1, subd. (a)(1).) An
> order denying a motion for reconsideration
> is also a nonappealable order. (*Rojes v.
> Riverside General Hospital* (1988) 203
> Cal.App.3d 1151, 1160-1161, 250
> Cal.Rptr. 435, overruled on another point
> in *Passavanti v. Williams* (1990) 225
> Cal.App.3d 1602, 1607, 275 Cal.Rptr.
> 887.) However, SFUSD does not appear

to raise any issues pertaining to the motion
for reconsideration in its briefs. Thus, it
appears to have abandoned its appeal from
the order denying the motion for
reconsideration. (*Trailer Train Co. v.
State Bd. of Equalization* (1986) 180
Cal.App.3d 565, 576, fn. 6, 225 Cal.Rptr.
717.)

### I. FACTS

In July 1988, appellant San Francisco Unified
School District filed an action against respondent
W.R. Grace & Company-Connecticut and others,
[FN2] alleging causes of action for strict liability,
negligence, breach of implied warranty, fraud and
civil conspiracy. [FN3] In its September 1989 third
amended complaint, SFUSD alleged that between
1968 and 1973, six of its schools were constructed
using asbestos-containing products. It also alleged
that some of these asbestos-containing products
have deteriorated such that immediate removal is
necessary. SFUSD alleged that the release of
asbestos fibers from these materials caused physical
injury to its schools and posed a potential hazard to
building users and visitors. It also alleges that as a
result of this hazard, it has incurred and will incur
costs to inspect its buildings, to determine the extent
of damage, to repair that damage, and to implement
and maintain a special operations and maintenance
program. It also alleges damage resulting from the
uninhabitability of its buildings during repair and
the notice it must give to all persons who have been
exposed to the asbestos in its buildings.

> FN2. Flintkote Corporation and
> Fibreboard Corporation were also named
> as defendants. They are not parties to this
> appeal.

> FN3. The action was originally filed in the
> City and County of San Francisco, but
> appears to have been moved to Sonoma
> County in August 1990.

The third amended complaint also alleges that
sometime after 1968 and continuing to the present
time, asbestos fibers have been released, damaging

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal
D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

the schools by contamination that was not and could
not have been known until January 17, 1983. On
that date, SFUSD became a member of a mandatory
federal class action. (See *In re Asbestos School
Litigation* (E.D.Pa.1984) 104 F.R.D. 422, affd. in
part and revd. in part (1986) 789 F.2d 996.) As a
result of the filing of this federal action, SFUSD
allegedly discovered the damage that before this
time was not perceptible by reasonable means and
of which it was blamelessly ignorant. On
December 1, 1987, *1324 SFUSD opted out of the
federal class action. It alleges that the limitations
period was tolled until that date as a result of that
action.

Grace answered this complaint in November 1989,
pleading as an affirmative defense the bar of the
statute of limitations. In July 1993, Grace moved
for summary judgment on statute of limitations
grounds. [FN4] In September 1993, the trial court
granted this motion, finding that the action was
barred by the three-year statute of limitations
period. (Code Civ.Proc., § 338.) The trial court
found that contamination was not required before
SFUSD's causes of action accrued; that SFUSD's
awareness that its schools contained potentially
damaging asbestos was sufficient to trigger
commencement of the limitations period. It ruled
that undisputed evidence established that SFUSD
was put on notice of this fact before June 1, 1980.
Thus, it reasoned, even if the limitations period was
tolled from January 17, 1983, through December 1,
1987, as a result of the federal class action, the July
1988 action was not timely filed. SFUSD moved
for reconsideration, **308 which was denied in
January 1994 for failure to present new facts or new
law. An order granting summary judgment was
filed, stating that SFUSD was entitled to recover
nothing under this action.

> FN4. The statute of limitations for an
> action for injury to real property is three
> years. (Code Civ.Proc., §§ 335, 338, subd.
> (b).) The parties do not appear to dispute
> this issue, but argue only about when that
> limitations period begins to run.

## II. COMMENCEMENT OF LIMITATIONS PERIOD

A. *Asbestos-in-Building Cases*

First, SFUSD contends that the trial court adopted
the wrong legal standard for commencing the
limitations period in this asbestos-in-building
action. It urges that the limitations period for a
strict liability or negligence cause of action does not
commence until asbestos contamination
occurred--or reasonably should have been
discovered to have occurred--in its buildings. For
its part, Grace argues that the trial court correctly
ruled that the statute of limitations began to run
when SFUSD suffered appreciable harm resulting
from the mere presence of potentially dangerous
asbestos in its buildings.

Our resolution of this question lies at the
intersection of two lines of California Supreme
Court cases. We must be faithful to both principles
establishing when a cause of action accrues for
purposes of the statute of limitations and those
cases defining what constitutes an injury for
purposes of a strict liability or negligence cause of
action. (See *1325*Jolly v. Eli Lilly & Co.* 1988) 44
Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923;
*Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 45
Cal.Rptr. 17, 403 P.2d 145.) Our analysis is
further complicated by the practical difficulties
presented in applying these generally accepted
principles within the context of an
asbestos-in-building case. As other courts around
the country have noted, asbestos cases are unique in
the law. (*Detroit Bd. of Educ. v. Celotex Corp.*
(1992) 196 Mich.App. 694, 493 N.W.2d 513, 518.)
The nature of the defect and the damage caused by
asbestos differs from the defects and damages found
in most other strict liability and negligence cases. (
*Board of Educ. v. A, C and S, Inc.* (1989) 131 Ill.2d
428, 137 Ill.Dec. 635, 643, 546 N.E.2d 580, 588.)
In most cases in which delayed discovery of a cause
of action arises, the injury is clear but the causation
or the identity of the tort-feasor is not known. By
contrast, in the typical asbestos-in-building case, the
identity of the tort-feasor is known as is the fact that
the building materials contain asbestos. What the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 Cal.Rptr.2d 305                                                                                          Page 5

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

plaintiff does not know is when the asbestos will become harmful--when it might injure those who occupy the building.

The physical danger to persons occupying a building containing asbestos begins when asbestos fibers become airborne. Respirable asbestos fibers may be released from friable asbestos-containing materials when these materials are disturbed. ( *Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.* (10th Cir.1992) 959 F.2d 868, 870.) Friable asbestos material, "when dry, may be crumbled, pulverized, or reduced to powder by hand pressure, and includes previously nonfriable material after such previously nonfriable material becomes damaged to the extent that when dry it may be crumbled, pulverized, or reduced to powder by hand pressure." (40 C.F.R. § 763.83 (1990); *Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, *supra,* at p. 870.) Thus, the timing problem unique to asbestos cases leads us to the unusual inquiry posed by this appeal--when does "injury" occur such that a strict liability or negligence cause of action accrues and the limitations period commences in an asbestos-in-building case?

B. *Statute of Limitations*

[1] Some background on statutes of limitations is helpful to understanding the issue presented in our case. SFUSD and Grace do not dispute the basic statute of limitations rules to be applied. The statute of limitations for injury to real property is three years. (Code Civ.Proc., § 338, subd. (b); *City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 578, 35 Cal.Rptr.2d 876.) The resolution of a statute of limitations defense is typically a factual question for the trier of fact. However, summary judgment is proper if the court can draw only one legitimate inference from uncontradicted *1326 evidence about the limitations issue. (See **309 *Jolly v. Eli Lilly & Co.*, *supra,* 44 Cal.3d at p. 1112, 245 Cal.Rptr. 658, 751 P.2d 923; *City of San Diego v. U.S. Gypsum Co.*, *supra,* at p. 582, 35 Cal.Rptr.2d 876; see also *Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 406, 163 Cal.Rptr. 711.)

[2][3][4][5] The gravamen of SFUSD's third amended complaint is in tort--specifically, its causes of action for strict liability and negligence. In tort actions, the statute of limitations commences when the last element essential to a cause of action occurs. (*City of San Diego v. U.S. Gypsum Co.*, *supra,* 30 Cal.App.4th at p. 582, 35 Cal.Rptr.2d 876; *Leaf v. City of San Mateo*, *supra,* 104 Cal.App.3d at p. 406, 163 Cal.Rptr. 711.) The statute of limitations does not begin to run and no cause of action accrues in a tort action until damage has occurred. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200- 201, 203, 98 Cal.Rptr. 849, 491 P.2d 433 [negligence].) If the last element of the cause of action to occur is damage, the statute of limitations begins to run on the occurrence of "appreciable and actual harm, however uncertain in amount," that consists of more than nominal damages. (*Davies v. Krasna* (1975) 14 Cal.3d 502, 513-514, 121 Cal.Rptr. 705, 535 P.2d 1161; *City of San Diego v. U.S. Gypsum Co.*, *supra,* 30 Cal.App.4th at pp. 582-583, 35 Cal.Rptr.2d 876; see *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1623, 2 Cal.Rptr.2d 796.) "... [O]nce plaintiff has suffered actual and appreciable harm, neither the speculative nor uncertain character of damages nor the difficulty of proof will toll the period of limitation." (*Davies v. Krasna*, *supra,* at p. 514, 121 Cal.Rptr. 705, 535 P.2d 1161; *City of San Diego v. U.S. Gypsum Co.*, *supra,* at p. 583, 35 Cal.Rptr.2d 876.) Cases contrast actual and appreciable harm with nominal damages, speculative harm or the threat of future harm. The mere breach of duty-- causing only nominal damages, speculative harm or the threat of future harm not yet realized--normally does not suffice to create a cause of action. (*Davies v. Krasna*, *supra,* 14 Cal.3d at p. 513, 121 Cal.Rptr. 705, 535 P.2d 1161; *Budd v. Nixen*, *supra,* at p. 200, 98 Cal.Rptr. 849, 491 P.2d 433; *Alhino v. Starr* (1980) 112 Cal.App.3d 158, 176, 169 Cal.Rptr. 136; see *Anthony v. Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442, 447, 102 Cal.Rptr. 113.)

[6] The common law rule that a cause of action accrued on the date of injury has been modified by the discovery rule. (*Jolly v. Eli Lilly & Co.*, *supra,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

**(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)**

44 Cal.3d at p. 1109, 245 Cal.Rptr. 658, 751 P.2d 923.) Under the discovery rule, a cause of action does not accrue until the plaintiff either discovers the injury and its negligent cause or could have discovered the injury and cause through the exercise of reasonable diligence. (*Ibid.; Leaf v. City of San Mateo, supra,* 104 Cal.App.3d at p. 407, 163 Cal.Rptr. 711.) The statute of limitations begins to run when the plaintiff suspects or should suspect that his or her injury was caused by wrongdoing--when the plaintiff has notice of information or circumstances that would put a reasonable person on inquiry. The plaintiff need not be *1327 aware of the specific facts necessary to establish the claim--these facts can be determined during pretrial discovery. Once a plaintiff suspects wrongdoing and therefore has an incentive to sue, he or she must decide whether to file suit or sit on his or her rights. When a suspicion exists, the plaintiff must go find the facts; he or she cannot wait for the facts to find him or her. (*Jolly v. Eli Lilly & Co., supra,* at pp. 1110-1111, 1114, 245 Cal.Rptr. 658, 751 P.2d 923; *Baright v. Willis* (1984) 151 Cal.App.3d 303, 312, 198 Cal.Rptr. 510.)

### C. *Physical Injury*

[7] As the limitations period cannot begin to run until damage occurs, we must consider what constitutes the element of damage for purposes of strict liability and negligence. In a landmark strict liability case that has since achieved nationwide influence, the California Supreme Court ruled that plaintiffs may recover in tort for physical injury to person or property, but not for purely economic losses that may be recovered in a contract action. ( *Seely v. White Motor Co., supra,* 63 Cal.2d at pp. 18-19, 45 Cal.Rptr. 17, 403 P.2d 145.) Since *Seely* was announced thirty years ago, other California courts have applied the same reasoning to other tort causes of action, such as negligence. (See *Sacramento Regional Transit Dist. v. Grumman Flxible* (1984) 158 Cal.App.3d 289, 294, 298, 204 Cal.Rptr. 736; **310*Anthony v. Kelsey-Hayes Co., supra,* 25 Cal.App.3d at pp. 446-447, 102 Cal.Rptr. 113.) Until physical injury occurs--until damage

rises above the level of mere economic loss--a plaintiff cannot state a cause of action for strict liability or negligence. (See, e.g. *Adams-Arapahoe School Dist. No. 28-J v. GAF Corp., supra,* 959 F.2d at p. 871.) [FN5]

> FN5. "Economic loss" as enunciated in *Seely* has been defined as the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. (*City of Manchester v. National Gypsum Co.* (D.R.I.1986) 637 F.Supp. 646, 650.) " '... [E]conomic loss generally means pecuniary damage that occurs through loss of value or use of the goods sold or the cost of repair together with consequential lost profits *when there has been no claim of personal injury or damage to other property.*' " (*MDU Resources Group v. W.R. Grace and Co.* (8th Cir.1994) 14 F.3d 1274, 1279, italics in original, cert. den. 513 U.S. 824, 115 S.Ct. 89, 130 L.Ed.2d 40, quoting *Cooperative Power v. Westinghouse Elec.* (N.D.1992) 493 N.W.2d 661, 663, fn. 5.) For example, the reduction of fair market value of buildings found to contain asbestos building materials may constitute an economic loss that cannot be recovered in tort in a strict liability or negligence action. Under the *Seely* analysis, no physical harm to persons or property has yet occurred--only economic losses that cannot be recovered in a strict liability or negligence case.

The distinction between contract recovery for economic loss and tort recovery for physical injury is not an arbitrary one, as the *Seely* court explained. It rests on an understanding of the nature of the responsibility that a manufacturer must undertake in distributing products. A manufacturer may properly be held liable for physical injuries caused by defects by requiring *1328 goods to match a standard of safety defined in terms of conditions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

**(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)**

that create unreasonable risks of harm. However, it cannot be held liable for the level of performance of products in the customer's business unless the manufacturer agreed that the product was designed to meet the customer's demands. A consumer should not be charged with bearing the risk of physical injury when a product is purchased, but can fairly be charged with the risk that the product will not match economic expectations unless the manufacturer agrees that it will. (*Seely v. White Motor Co.*, *supra*, 63 Cal.2d at p. 18, 45 Cal.Rptr. 17, 403 P.2d 145; *Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, *supra*, 959 F.2d at p. 872; see *City of Manchester v. National Gypsum Co.* (D.R.I.1986) 637 F.Supp. 646, 650 [tort obligations based on law; contract obligations based on contract].)

*Seely* has been widely cited in federal, California and other state decisions for this physical injury/economic loss distinction in tort/contract cases. In other jurisdictions, asbestos defendants have argued that plaintiffs bringing tort actions in asbestos-in-building cases should be limited to recovery for economic loss. In many of these cases, the *Seely* distinction between economic loss and physical harm was the basis for the rejection of this argument. (See, e.g., *T.H.S. Northstar Assoc. v. W.R. Grace & Co.* (D.Minn.1991) 767 F.Supp. 969, 970-974 [Minnesota]; *Clayton Center Assoc. v. W.R. Grace & Co.* (Mo.App.E.D.1993) 861 S.W.2d 686, 692-693 [Missouri]; *City of Manchester v. National Gypsum Co.*, *supra*, 637 F.Supp. at pp. 648-652 [New Hampshire]; *City of Greenville v. W.R. Grace & Co.* (4th Cir.1987) 827 F.2d 975, 976-978 [South Carolina].) Apparently, no jurisdiction considering the issue has applied the economic loss doctrine in the context of an asbestos-in-building case. (*Detroit Bd. of Educ. v. Celotex Corp.*, *supra*, 493 N.W.2d at p. 518 [Michigan]; see *Hebron Public Sch. D. No. 13 v. U.S. Gypsum* (D.N.D.1988) 690 F.Supp. 866, 870 [North Dakota; noting that dominant line of cases rejects economic loss theory application in asbestos-in-building cases].) Some of these out-of-state cases specifically cite and discuss *Seely*. (See, e.g., *Adams-Arapahoe School Dist. No. 28-J*

*v. GAF Corp.*, *supra*, 959 F.2d at p. 871 [Colorado] ; *Board of Educ. v. A, C and S, Inc.*, *supra*, 137 Ill.Dec. at p. 645, 546 N.E.2d at p. 590 [Illinois]; *Town of Hooksett School Dist. v. W.R. Grace and Co.* (D.N.H.1984) 617 F.Supp. 126, 129-131 [New Hampshire]; *MDU Resources Group v. W.R. Grace and Co.*, *supra*, 14 F.3d at p. 1278, fn. 5 [North Dakota].)

Other jurisdictions that adopt *Seely's* physical injury/economic loss distinction routinely find that asbestos contamination constitutes the physical injury element of strict liability or negligence causes of action in an asbestos-**\*\*311** in-building case. The dangerousness that creates a risk of harm alone has been held to be insufficient to support an award of damages-- there must be **\*1329** physical harm caused by that product. (*Board of Educ. v. A, C and S, Inc.*, *supra*, 137 Ill.Dec. at p. 642, 546 N.E.2d at p. 587.) At the release of asbestos fibers into the environment, the cause of action has been held to accrue and the statute of limitations to begin to run. (*Kansas City v. W.R. Grace & Co.* (Mo.App.1989) 778 S.W.2d 264, 268.) The injury for which asbestos plaintiffs are being recompensed has been found to be the contamination of their buildings, not the mere presence of asbestos. ( *MDU Resources Group v. W.R. Grace and Co.*, *supra*, 14 F.3d at p. 1279.) The injury has been found to be the contamination of public buildings with asbestos fibers which endanger the lives and health of the building's occupants. (*City of Greenville v. W.R. Grace & Co.*, *supra*, 827 F.2d at pp. 977-978.)

In a case similar to the one before us, the Tenth Circuit of the United States Court of Appeal considered whether a Colorado public school district had suffered an injury for purposes of causes of action for negligence or strict liability, to permit recovery of the cost of removing asbestos-containing floor tile. (*Adams-Arapahoe School Dist. No. 28-J v. GAF Corp.*, *supra*, 959 F.2d at p. 870, fn. 3.) The district alleged that it had suffered three separate injuries--from the mere presence of the asbestos floor tile, from the nature of the risk inherent in the asbestos tile, and from the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal
D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

nature of contamination caused by past releases of asbestos fibers from the asbestos tile. (*Id.* at p. 871.)

The Tenth Circuit found that only contamination constitutes a compensable injury. (*Id.* at pp. 871-873.) Damage from the mere presence of vinyl asbestos floor tile may not be recovered under Colorado tort law, nor may the school district recover for the mere risk of harm emanating therefrom. These are not physical injuries that have yet been suffered, the Tenth Circuit reasoned. "... [O]nly asbestos contamination constitutes a physical injury compensable under tort law." (*Id.* at p. 872.)

D. *Physical Injury in Asbestos-in-Building Cases*

[8] We have seen that *Seely* precludes recovery for economic loss in a strict liability or negligence cause of action. Cases from other jurisdictions illustrate the significance of this principle in the context of an asbestos-in-building case—it precludes tort recovery for the loss of economic value of buildings simply because they contain asbestos. As no cause of action could be stated for strict liability or negligence in an asbestos-in-building case without physical injury to person or property, *Seely* compels the conclusion that a tort cause of action cannot accrue until physical injury occurs. Once physical injury to property occurs—assuming that damage is the last element of the tort cause of action to occur—the cause of action accrues and the limitations period commences.

*1330 In our case, the trial court based its summary judgment order on its holding that the mere presence of asbestos in SFUSD's buildings constitutes the injury required in a strict liability or negligence case. However, this conclusion would permit a plaintiff to recover purely economic contract damages in tort, contrary to the command of *Seely.* As other jurisdictions have noted, the risk of contamination endangering a building's occupants is not the type of risk that is normally allocated between parties to a contract by agreement. (See, e.g., *City of Greenville v. W.R. Grace & Co., supra,* 827 F.2d at pp. 976-978 [under South Carolina law, asbestos-in-building plaintiff may state cause of action for negligence].)

In order to be consistent with the principles of *Seely,* it appears that until contamination occurs, the only damages that arise are economic losses that do not constitute physical injury to property recoverable in strict liability or negligence. Physical injury resulting from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue in an asbestos-in-building case and the limitations period commence.

However, to be valid, our conclusion must also be consistent with those California Supreme Court cases delineating when a cause of action accrues and the statute of limitations period begins to run. (See **312*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1110- 1111, 245 Cal.Rptr. 658, 751 P.2d 923; *Davies v. Krasna, supra,* 14 Cal.3d at p. 513, 121 Cal.Rptr. 705, 535 P.2d 1161; *Budd v. Nixen, supra,* 6 Cal.3d at p. 200, 98 Cal.Rptr. 849, 491 P.2d 433.) We have seen that these cases hold that when injury or damage is the last element of a tort cause of action to occur, the cause of action accrues once any actual and appreciable harm has occurred. Actual, appreciable harm is contrasted with nominal damages, speculative harm or the threat of future harm. (See *Davies v. Krasna, supra,* at p. 513, 121 Cal.Rptr. 705, 535 P.2d 1161; *Budd v. Nixen, supra,* at p. 200, 98 Cal.Rptr. 849, 491 P.2d 433; *Alhino v. Starr, supra,* 112 Cal.App.3d at p. 176, 169 Cal.Rptr. 136; *Anthony v. Kelsey-Hayes Co., supra,* 25 Cal.App.3d at p. 447, 102 Cal.Rptr. 113.) If the mere presence of asbestos constitutes only a threat of future harm, we may conclude that asbestos contamination is the appreciable harm that forms the damage element of a strict liability or negligence cause of action. This analysis would allow us to fashion a rule that is consistent with both lines of California Supreme Court authority—the *Seely* cases on physical injury in a strict liability or negligence context and the cases allowing the commencement of the statute of limitations once any appreciable harm has been realized.

E. *Consistency with California Cases*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 Cal.Rptr.2d 305                                                          Page 9

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

One published California case has addressed the question of when appreciable harm occurs in an asbestos-in-building case for purposes of commencement of the statute of limitations, coming to a different conclusion *1331 than we have reached. (See *City of San Diego v. U.S. Gypsum Co., supra,* 30 Cal.App.4th 575, 35 Cal.Rptr.2d 876.) In that case, the City of San Diego argued that the limitations period did not commence until each building was contaminated by a significant release of asbestos fibers or dust, posing a human health hazard. (*Id.* at pp. 581-582, 35 Cal.Rptr.2d 876.) Division Six of the Second District disagreed, holding that "... appreciable harm is not limited to the existence of an actual health hazard. As pleaded, the city's knowledge of deterioration to its buildings caused by asbestos constitutes the infliction of an appreciable harm that begins the statute of limitations running." (*Id.* at p. 578, 35 Cal.Rptr.2d 876.) Thus, it impliedly held that the mere presence of asbestos constitutes injury, necessarily finding that injury occurs before contamination.

We find the *City of San Diego* analysis to be unsatisfactory, for several reasons. First, the *City of San Diego* court purported not to resolve the contamination issue, while acknowledging that the city's contamination argument was inconsistent with its ruling. (See *City of San Diego v. U.S. Gypsum Co., supra,* 30 Cal.App.4th at p. 590, 35 Cal.Rptr.2d 876.) Second, while it based its ruling on the appreciable harm line of cases, the Second District did not discuss whether its finding of appreciable harm was consistent with those cases requiring physical injury for purposes of strict liability or negligence causes of action. (*Id.* at pp. 583, 590, 35 Cal.Rptr.2d 876; see *Seely v. White Motor Co., supra,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145.) Instead, it applied its interpretation of what constitutes appreciable harm-- anything more than nominal damages--at the expense of *Seely,* suggesting that those out-of-state cases that have accepted the contamination argument conflict with the accrual of a cause of action on the occurrence of appreciable harm. (See *City of San Diego v. U.S. Gypsum Co., supra,* at pp. 582, 590, 35 Cal.Rptr.2d 876.)

In our view, this is where the *City of San Diego* court's analysis falters. It interprets any moneys spent that constitute more than nominal damages as the appreciable harm that triggers the commencement of the statute of limitations without considering whether any physical injury has yet occurred. A careful reading of the appreciable harm cases reveals that they contrast appreciable harm with nominal damages *or* speculative harm *or* a threat of future harm. (See *Davies v. Krasna, supra,* 14 Cal.3d at p. 513, 121 Cal.Rptr. 705, 535 P.2d 1161; *Budd v. Nixen, supra,* 6 Cal.3d at p. 200, 98 Cal.Rptr. 849, 491 P.2d 433; *Alhino v. Starr, supra,* 112 Cal.App.3d at p. 176, 169 Cal.Rptr. 136; *Anthony v. Kelsey-Hayes Co., supra,* 25 Cal.App.3d at p. 447, 102 Cal.Rptr. 113.) Testing and investigation are typically undertaken once a responsible property owner discovers that asbestos may be present in its building. **313 But the act of testing and investigating which discloses no contamination cannot be equated with the actual harm of contamination. At best, such testing and investigation could show a threat of future harm. In light of the *1332 "threat of future harm" cases and the unique analytical problems posed by an asbestos-in-building case, we may reasonably conclude that the California Supreme Court did not intend such a result. These expenses may be found to have been undertaken to determine when the threat of future harm ripens into appreciable, actual harm for purposes of the accrual of a tort cause of action.

[9] Our holding would also be consistent with other relevant California authority. Neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the limitations period. ( *Davies v. Krasna, supra,* 14 Cal.3d at p. 514, 121 Cal.Rptr. 705, 535 P.2d 1161; *Miller v. Lakeside Village Condominium Assn., supra,* 1 Cal.App.4th at p. 1623, 2 Cal.Rptr.2d 796.) The extent of damage is not an element of a cause of action in tort. (*Id.* at p. 1623, 2 Cal.Rptr.2d 796.) However, in an asbestos-in-building case, the *extent* of damage is not at issue--it is the *existence* of injury

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8/31/2005

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

that is uncertain. Last year, the California Supreme Court stated that ignorance of the existence of an injury may delay the running of the statute of limitations until the date of discovery. (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932, 30 Cal.Rptr.2d 440, 873 P.2d 613.) While an aggrieved party generally need not know the exact manner in which its injuries were effected, the plaintiff must know of the existence of injury. (*Ibid.*) The discovery rule is based on the notion that statutes of limitation are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights. Thus, the limitations period should not be interpreted to bar a victim of wrongful conduct from asserting a cause of action before he or she could reasonably be expected to discover its existence. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536, 282 Cal.Rptr. 80.) The plaintiff must be aware of the physical manifestation of the injury for the cause of action to accrue and the statute of limitations to begin running. (See *Rose v. Fife* (1989) 207 Cal.App.3d 760, 768, 255 Cal.Rptr. 440.) By contrast, to find--as *City of San Diego v. U.S. Gypsum Co., supra,* 30 Cal.App.4th 575, 35 Cal.Rptr.2d 876, necessarily did--that the mere presence of asbestos in a building constitutes an appreciable, actual injury--would be inconsistent with at least three California Supreme Court cases. (See *Davies v. Krasna, supra,* 14 Cal.3d 502, 121 Cal.Rptr. 705, 535 P.2d 1161; *Budd v. Nixen, supra,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433; *Seely v. White Motor Co., supra,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145.) If the California Supreme Court intended to overrule these cases, it is unlikely that it would do so--especially a landmark case such as *Seely*--sub silentio.

We see no inconsistency between our holding and the Supreme Court's decision in *Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923. In *Jolly,* a woman who suspected that she had been injured by her mother's ingestion of a prescription drug, but who did not know--and did not investigate to *1333 learn--the name of the manufacturer, was held to have lost her right to bring a personal injury action due to the passage of

time. Ignorance of the legal significance of known facts or the identity of the defendant does not delay the running of the statute of limitations. Only ignorance of one or more critical facts could have that effect. (*Id.* at p. 1110, 245 Cal.Rptr. 658, 751 P.2d 923.) The high court disapproved an appellate decision holding that the statute of limitations did not begin to run until the plaintiff knew or reasonably should have known of the facts constituting wrongful conduct, as well as the fact of her injury and its connection to the drug. (*Ibid.*) Assuming that injury has already occurred, once the plaintiff suspects wrongdoing, the statute of limitations begins to run. (*Id.* at p. 1111, 245 Cal.Rptr. 658, 751 P.2d 923.)

[10] The issue presented by our case is distinguishable from that presented in *Jolly.* SFUSD does not ask whether wrongdoing occurred, but what constitutes an injury in the context of an asbestos-in-building case. Injury and wrongdoing are distinct legal issues. (See **314*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at p. 1112, 245 Cal.Rptr. 658, 751 P.2d 923.) The word "injury" is a term of art referring to the damaging effect of the wrongful act, not the act itself. (See *Zambrano v. Dorough* (1986) 179 Cal.App.3d 169, 172, 224 Cal.Rptr. 323.) Last year, the California Supreme Court distinguished between ignorance of the identity of the wrongdoer and ignorance of the injury itself. (See *Bernson v. Browning-Ferris Industries, supra,* 7 Cal.4th at p. 932, 30 Cal.Rptr.2d 440, 873 P.2d 613.) As *Jolly* assumes injury has occurred, *Jolly* may reasonably be read to apply when the issue is wrongdoing, but not when the issue is what constitutes injury.

The California Supreme Court has recognized that in unusual cases, a plaintiff may be aware of wrongdoing before damage arises. Ordinarily, a plaintiff has already suffered damage by the time the tortious conduct is discovered. Only in an unusual case will the plaintiff discover a defendant's negligence without having suffered any consequential damage. (See *Budd v. Nixen, supra,* 6 Cal.3d at p. 201, 98 Cal.Rptr. 849, 491 P.2d 433 [legal malpractice case].) As asbestos-in-building

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

**(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)**

cases are admittedly unique because of the dormant period before asbestos becomes friable, it seems reasonable to infer that contamination often arises after evidence of wrongdoing—the installation of potentially dangerous asbestos—has been discovered.

### F. *Consistency with Other Jurisdictions*

The contamination rule would have the added benefit of consistency with decisions from most other jurisdictions in the United States. Asbestos in buildings is, after all, a nationwide problem. "... [M]ost, if not all jurisdictions deciding 'asbestos in buildings' cases have ruled contamination constitutes physical injury compensable in tort." \*1334(*Adams-Arapahoe School Dist. No. 28-J v. GAF Corp., supra,* 959 F.2d at p. 873.) Until asbestos contamination occurs—until asbestos fibers are released into the air, no cause of action for negligence or strict liability accrues in an asbestos-in-building case. (*Id.* at p. 872 [Colorado]; *State Farm Mut. Auto. Ins. v. W.R. Grace & Co.* (C.D.Ill.1992) 834 F.Supp. 1046, 1048-1049, affd. 24 F.3d 955, cert. den. 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 [Illinois]; *Farm Credit Bank of Louisville v. USMP* (W.D.Ky.1994) 864 F.Supp. 643, 650-651 [Kentucky]; *Kansas City v. W.R. Grace & Co., supra,* 778 S.W.2d at p. 268 [Missouri]; *MDU Resources Group v. W.R. Grace and Co., supra,* 14 F.3d at p. 1279 [North Dakota].) In such jurisdictions, the relevant inquiry under the discovery rule is when did plaintiff know that asbestos was being released from the asbestos-containing material and thus presented a hazard. (See *State Farm Mut. Auto. Ins. v. W.R. Grace & Co., supra,* 834 F.Supp. at pp. 1048-1049.)

In cases arising in somewhat different contexts, other states have ruled that the injury in an asbestos-in-building case is the contamination of the building with asbestos fibers. (*Board of Educ. v. A, C and S, Inc., supra,* 137 Ill.Dec. at p. 643, 546 N.E.2d at p. 588 [Illinois]; *City of Greenville v. W.R. Grace & Co., supra,* 827 F.2d at pp. 977-978 [South Carolina]; see *City of Manchester v. National Gypsum Co., supra,* 637 F.Supp. at pp. 651-652 [New Hampshire; allegation of

contamination is sufficient physical harm to state claims for negligence and strict liability].) These rulings make it likely that the courts of these states will also find that a tort cause of action for damage to a building from asbestos accrues only on contamination.

Only two states have found that the cause of action accrues before contamination occurs. (*Detroit Bd. of Educ. v. Celotex Corp., supra,* 493 N.W.2d at pp. 519-520 [in Michigan, knowledge of potential hazard is sufficient to begin running of limitations period]; *Maryland Cas. Co. v. W.R. Grace and Co.* (2d Cir.1993) 23 F.3d 617, 627, cert. den. 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 559 [in New York insurance policy, "damage" occurs on installation of asbestos products in buildings; "injury" is presence of asbestos hazard].) One of those cases—arising in New York—may be distinguishable as one arising in contract, rather than in tort. (See, e.g., *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 813-814, 818, 274 Cal.Rptr. 820, 799 P.2d 1253 [decision was based on contract \*\*315 language, not social policy considerations].)

### G. *Conclusion—Contamination is Appreciable Harm in Asbestos-in-Building Case*

A reasoned analysis of the issues posed by our case requires us to weave new cloth in order to be consistent with both statute of limitations/accrual of \*1335 cause of action principles enunciated by the California Supreme Court and its landmark case defining what constitutes "injury" for purposes of strict liability and negligence causes of action. In California, no cause of action accrues—i.e., the statute of limitations does not commence—until all elements of the cause of action, including that of damage or injury, have occurred. There must be appreciable harm before the damage element of a cause of action accrues, triggering the commencement of the limitations period. In a strict liability or negligence case, the compensable injury must be physical harm to persons or property, not mere economic loss. Accordingly, we hold that in an asbestos-in-building case, the mere presence of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

asbestos constitutes only a threat of future harm. Contamination by friable asbestos is the physical injury and the actual, appreciable harm that must exist before a property owner's strict liability or tort cause of action against an asbestos manufacturer accrues and the limitations period commences.

### III. TRIABLE ISSUE OF FACT

SFUSD also contends that--applying the correct legal standard for commencement of an action--a triable issue of fact existed about whether it knew or should have known that three schools were damaged by the released of asbestos fibers before June 1980. As we have found, a strict liability or negligence cause of action accrues in an asbestos-in-building case when the building becomes contaminated or the plaintiff should have known that contamination had occurred. Contamination constitutes injury--when injury is the last element of the cause of action for strict liability or negligence to occur, the cause of action accrues and the statute of limitations begins to run when contamination occurs. (See pt. II, *ante.*)

Clearly, a different result might have been reached on the motion for summary judgment had the trial court applied a contamination rather than a mere presence of asbestos standard for commencement of the limitations period. What is not clear to us on this record is whether or not Grace's statute of limitations defense may be resolved as a matter of law. Certain facts are established. The original complaint in this action was filed on July 29, 1988. The parties agreed to toll the limitations period for 60 days between May 2 and July 2, 1988. The three-year limitations period applies. (Code Civ.Proc., § 338, subd. (b).) SFUSD also contends that the limitations period was tolled from January 17, 1983, through December 1, 1987, during the time when it was a member of the class in the federal asbestos class action. (See pt. IV, *post.*)

SFUSD claims that the evidence is undisputed that there was no unacceptable contamination before May 28, 1985. However, the dates of actual *1336 contamination of each school [FN6] are issues of fact for a jury to resolve, unless the trial court finds

that these factual issues may be resolved as a matter of law. As the trial court erroneously focused on when SFUSD was put on notice that its schools contained potentially dangerous asbestos, we think it prudent to remand this matter to the trial court for a determination of when contamination occurred at each school or when SFUSD should reasonably have discovered that each school's contamination occurred. If the issue can be resolved as a matter of law, the trial court shall make the appropriate summary judgment order. [FN7] If the matter cannot be resolved as a matter of law, the trier of fact shall determine any unresolved issues.

> FN6. SFUSD alleges that each of the six schools in which asbestos was installed were built at different times, with construction beginning between 1968 and 1973. Thus, the factual question of when contamination occurred must be resolved on a building-by-building basis.

> FN7. Code of Civil Procedure section 437c --as recently amended-- will apply on remand.

### IV. FEDERAL PRECLUSION

*A. Facts*

As this matter is to be remanded to the trial court (see pt. III, *ante* ), we deem it **316 appropriate to address one other substantive legal issue. Grace contends that the federal asbestos class action did not toll the statute of limitations period during SFUSD's membership in the class. For its part, SFUSD argues that the limitations period was tolled from the inception of the federal class action until it opted out of the class.

Grace does not dispute the facts alleged in SFUSD's complaint. On January 17, 1983, SFUSD became a member of a mandatory federal class action. (See *In re Asbestos School Litigation, supra,* 104 F.R.D. 422.) It opted out of this class action on December 1, 1987. In its complaint, SFUSD alleged that the statute of limitations was tolled for the period between these two dates. The trial court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 Cal.Rptr.2d 305                                                                                                      Page 13

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal
D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

did not rule on this issue, finding the action was
untimely even if tolling had occurred.

B. *Applicable Law*

The United States Supreme Court has held that the
filing of a class action tolls the applicable statute of
limitations for all class members. (*Crown, Cork &
Seal Co. v. Parker* (1983) 462 U.S. 345, 352-353,
103 S.Ct. 2392, 2396- 2397, 76 L.Ed.2d 628; *Eisen
v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 176,
fn. 13, 94 S.Ct. 2140, 2152, fn. 13, 40 L.Ed.2d 732;
*American Pipe & Construction Co. v. Utah* (1974)
414 U.S. 538, 552-556, 94 S.Ct. 756, 765-767, 38
L.Ed.2d 713; see *1337May v. A, C and S, Inc.*
(E.D.Mo.1993) 812 F.Supp. 934, 939.) In *Jolly v.
Eli Lilly & Co., supra,* 44 Cal.3d at pages
1118-1126, 245 Cal.Rptr. 658, 751 P.2d 923, the
California Supreme Court discussed these United
States Supreme Court cases. It stated that it was
not bound by these cases, but considered their
applicability. (*Id.* at pp. 1118- 1119, 245 Cal.Rptr.
658, 751 P.2d 923.) Then, *Jolly* declined to
"extend" the United States Supreme Court cases to
a mass-tort class action situation presented by a
prescription drug litigation case. (*Id.* at pp. 1122,
1124, 245 Cal.Rptr. 658, 751 P.2d 923.) The court
noted that the two policy considerations underlying
the tolling rule are to protect the efficiency and
economy of litigation and to protect the defendant
from unfair claims. (*Id.* at p. 1122, 245 Cal.Rptr.
658, 751 P.2d 923.) It did not apply the United
States Supreme Court cases because the
prescription drug class action complaint "neither
sufficiently put defendants on notice of the
substance and nature of plaintiff's claims, nor served
to further economy and efficiency of litigation...." (
*Ibid.*) The court did not establish a blanket rule
against tolling, but determined that each case should
be analyzed to determine whether claims asserted in
the class action have placed the defendant on notice
of the claims at issue in the individual action. (See
*id.* at pp. 1122-1123, 245 Cal.Rptr. 658, 751 P.2d
923.)

One appellate decision discusses *Jolly* in the
context of tolling limitations periods. (See *Becker*

*v. McMillin Construction Co.* (1991) 226
Cal.App.3d 1493, 277 Cal.Rptr. 491.) [FN8] In a
mass construction defect context, *Becker* held that
tolling was proper. (*Id.* at p. 1502, 277 Cal.Rptr.
491.) The court reviewed the findings of *Jolly* on
tolling, concluded that the California Supreme
Court's holding was a narrow one, and applied the
United States Supreme Court cases in a factually
different context from the mass tort personal injury
case presented in *Jolly*. "... [I]t is possible for some
prior class actions based on tort, particularly
property damage cases, to provide adequate notice
to a defendant so that tolling is proper...." (*Id.* at p.
1501, 277 Cal.Rptr. 491.) Although the lack of
commonality led to denial of class certification, the
*Becker* court found that the substantive class and
individual claims were sufficiently similar to give
the developer notice of the litigation for purposes of
applying the tolling rule. (*Ibid.*) The class action
alleged claims for negligence and strict liability--the
same claims that Becker later raised in his
individual action. (See *id.* at pp. 1496, 1501-1502,
277 Cal.Rptr. 491.) Once the class action was
filed, the developer was aware of the need to
preserve evidence and witnesses regarding the
claims of all class members. (*Id.* at p. 1501, 277
Cal.Rptr. 491.) The experienced developer was
expected to have a general familiarity with the
nature of **317 the claims alleged against it.
Variations of proof in causation and damage were
not held to be as extreme in the construction defect
context as they would be in personal injury mass
tort cases. Therefore, "[r]ules regarding notice
should accordingly be less stringent for this type of
property damage where tolling is *1338
concerned." (*Id.* at p. 1502, 277 Cal.Rptr. 491.)
The court added a final warning against a
"too-liberal interpretation" of the United States
Supreme Court's tolling rule. (*Ibid.*)

> FN8. The California Supreme Court
> denied a petition for review in *Becker*. (
> *Becker v. McMillin Construction Co.,
> supra,* 226 Cal.App.3d at p. 1503, 277
> Cal.Rptr. 491.)

C. *Lack of Notice*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

44 Cal.Rptr.2d 305                                                                                          Page 14

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

On a number of grounds, Grace urges that the limitations period was not tolled for the time during which SFUSD was a member of the class in the national asbestos class action. SFUSD protests that Grace waived its challenge for lack of notice by failing to raise it in the trial court. SFUSD claims that Grace never asserted as one of its undisputed material facts that it lacked notice of SFUSD's claims, such that there is no evidence to support Grace's lack of notice argument. It also argues that it has been prejudiced by Grace's raising this "fact-based claim" on appeal after the time to conduct discovery about Grace's notice has passed. Thus, SFUSD contends that Grace waived its attack on class action tolling by failing to dispute the extent of Grace's knowledge of SFUSD's claims. The trial court did not rule on tolling only because it found that the action was untimely even if the limitations period was tolled as SFUSD alleged that it was. Given our remand of this matter, the tolling issue will have to be resolved in order for the trial court to rule on the remaining issues. Thus, we find it appropriate to address the merits of this question.

Grace first argues that the federal class action did not provide it with meaningful notice of SFUSD's claims against Grace. It emphasizes language in *Jolly* suggesting that mass tort actions are often inappropriate for class action certification and do not lend themselves to tolling. (See *Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1121, 1123, 245 Cal.Rptr. 658, 751 P.2d 923.) In *Jolly,* the California Supreme Court explained that "[t]he major elements in tort actions for personal injury--liability, causation, and damages--may vary widely from claim to claim...." (*Id.* at p. 1123, 245 Cal.Rptr. 658, 751 P.2d 923.) "... [P]ersonal-injury mass-tort class-action claims can rarely meet the community of interest requirement in that each member's right to recover depends on facts peculiar to each particular case," these claims being held to be "presumptively incapable of apprising defendants of the substantive claims being brought against them'." (*Id.* at p. 1125, 245 Cal.Rptr. 658, 751 P.2d 923.) It is presumed that the lack of commonality of interest will defeat certification and

preclude application of the United States Supreme Court cases requiring tolling of the limitations period. (*Ibid.*)

[11] However, as SFUSD argues, its asbestos claims are more similar to the property damage claims for which tolling was allowed in *Becker* than the prescription drug personal injury claims in *Jolly.* (See *1339Becker v. McMillin Construction Co., supra,* 226 Cal.App.3d 1493, 277 Cal.Rptr. 491.) The federal class action for asbestos-in-building cases appears to raise the same issues that SFUSD's case does--tort causes of action raised by school districts around the country against asbestos manufacturers and sellers such as Grace, attempting to recover costs of asbestos abatement from those manufacturers and sellers rather than charging them to public taxpayers. Once the national asbestos in schools litigation had begun, Grace and other asbestos defendants were on notice that districts throughout the country would seek to recover the costs of asbestos abatement. What products were sold to which schools, the level of asbestos in each of them, and other issues of proof and defense were clearly at issue. Unlike *Jolly,* there are no individual plaintiffs whose medical histories raise differing issues that do not lend themselves to resolution in a class action. Grace urges that the number of claimants in the original class militates against tolling, but other factors favor tolling--the federal class members raised the same claim affecting the same subject matter, and the members could be identified through public contracts for the purchase and installation of building materials containing asbestos. As we conclude that the property damage claim SFUSD raises is **318 closer to that raised in *Becker* than those raised in *Jolly,* we reject Grace's claim that the federal class action did not give it sufficient notice of the claims that SFUSD now raises.

### D. *Federal Effect on State Limitations Periods*

Next, Grace contends that it is unwise for California to permit federal courts to dictate a tolling effect on state statutes of limitations. The asbestos class action of which SFUSD was a

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

member was filed in federal court. (See *In re Asbestos School Litigation, supra,* 104 F.R.D. 422.) Contrary to Grace's argument, we believe that the fact that the class action was filed in federal court makes it *more* likely that the United States Supreme Court cases apply. The United States Supreme Court is the ultimate authority on the meaning of Federal Rules of Civil Procedure, which was the basis of these decisions. These procedural rules apply in all federal courts, including the federal asbestos class action. Under the Supremacy Clause, these decisions have the force of law in California if the class action was filed in federal court. (See U.S. Const., art. VI, cl. 2.) At least one federal district court has noted that not one of the three key United States Supreme Court cases on tolling has "limited its holding to federal statutes of limitations." (*May v. AC & S, Inc., supra,* 812 F.Supp. at p. 939.)

California has adopted somewhat different state class action rules and thus only considers federal decisions about federal rules to be persuasive to the extent that state and federal rules parallel each other and state policy *1340 considerations are similar to those underlying the federal rules. (See *Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1118-1119, 245 Cal.Rptr. 658, 751 P.2d 923 [use federal procedures in absence of controlling state authority].) However, in both *Jolly* and *Becker,* the underlying class actions and the subsequent individual actions were brought in state court. (See *id.* at pp. 1106, 1118, 245 Cal.Rptr. 658, 751 P.2d 923; *Becker v. McMillin Construction Co., supra,* 226 Cal.App.3d at pp. 1496-1497, 277 Cal.Rptr. 491.) Thus, SFUSD's case is distinguishable from these state class action cases.

### E. Certification

[12] Grace also argues that a plaintiff who opts out of a certified class is not entitled to tolling. In our case, the class was certified in the federal action on September 28, 1984. (See *In re Asbestos School Litigation, supra,* 104 F.R.D. at p. 433, affd. 789 F.2d at pp. 998-999.) In both *Jolly* and *Becker,* class certification was denied. (See *Jolly v. Eli Lilly*

*& Co., supra,* 44 Cal.3d at p. 1118, 245 Cal.Rptr. 658, 751 P.2d 923; *Becker v. McMillin Construction Co., supra,* 226 Cal.App.3d at p. 1496, 277 Cal.Rptr. 491.) None of the cases that Grace cites in its brief for this proposition were published, making their citation improper. (See Cal. Rules of Court, rule 977(a).) Our independent research revealed one Michigan appellate court decision holding that a school district that opted out of the federal asbestos class action before it was certified was not entitled to toll the limitations period for a separate state action. (*Warren Schools v. W.R. Grace & Co.* (1994) 205 Mich.App. 580, 518 N.W.2d 508, 511.) Still, other courts have applied the United States Supreme Court decisions to toll the limitations period when a plaintiff opts out of the class. (See, e.g., *Adams Public School Dist. v. Asbestos Corp., Ltd.* (8th Cir.1993) 7 F.3d 717, 718, fn. 1; *Tosti v. City of Los Angeles* (9th Cir.1985) 754 F.2d 1485, 1488 [limitations period begins to run again when plaintiff opts out of federal class action]; *May v. A, C and S, Inc., supra,* 812 F.Supp. at p. 939; *Independent School Dist. No. 197 v. W.R. Grace & Co.* (D.Minn.1990) 752 F.Supp. 286, 291, fn. 3.) Most persuasively, two of the United States Supreme Court cases interpreting the seminal tolling case appear to assume that a class member who opts out would be entitled to the benefit of the tolling rule. (See *Crown, Cork & Seal Co. v. Parker, supra,* 462 U.S. at p. 351, 103 S.Ct. at p. 2396; *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at p. 176, fn. 13, 94 S.Ct. at p. 2152, fn. 13; see also *Tosti v. City of Los Angeles, supra,* at p. 1488.) Thus, we are satisfied that a plaintiff who opts out of a federal class action is entitled to have the limitations period tolled during the time when it was a member of the class.

**319 F. *Equitable Grounds*

[13][14] Finally, Grace urges that tolling the limitations period is an equitable doctrine and that it would be inequitable to do so in the instant case. The *1341 application of the doctrine of equitable tolling of statutes of limitations requires lack of prejudice to the defendant and good faith conduct on the part of the plaintiff. (*Addison v. State of*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

(Cite as: 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305)

*California* (1978) 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 578 P.2d 941.) Grace contests SFUSD's claim that its asbestos-containing materials contaminated the schools and argues that by removing the materials before filing this lawsuit, SFUSD destroyed evidence crucial to Grace's defense. "The best evidence supporting this defense is an examination and testing of the materials in-place--prior to any removal." Thus, Grace urges us to find both lack of good faith on SFUSD's part and prejudice resulting to the asbestos defendant.

This argument is specious. If SFUSD reasonably suspected that its schools might be contaminated by asbestos, it had a duty to its students, employees and visitors to determine whether asbestos was present and to remove any health hazard. The discharge of this duty suggests no bad faith on the SFUSD's part. As long as there is reliable evidence establishing that Grace sold the materials to SFUSD and that the materials contained asbestos--evidence that SFUSD would have to provide in order to meet its burden of proof of causation--Grace cannot be prejudiced by removal of the contaminated materials.

As Grace's arguments are unavailing, we conclude that SFUSD is entitled to have the limitations period for this action tolled during the period that it was a member of the class of plaintiffs in the federal asbestos class action. On remand, the trial court shall toll the limitations period for the applicable time when determining whether SFUSD's action was timely filed.

## V. CONCLUSION

The trial court erred in granting summary judgment to Grace because it based its ruling on a finding that the limitations period commenced before contamination occurred. Accordingly, we find it appropriate to remand this matter to the trial court to determine whether the action was filed within the limitations period, applying the principles enunciated in our decision. If the trial court can make this determination as a matter of law, it shall rule on the motion for summary judgment. If it

determines that there are factual issues *1342 pertaining that must await determination by the trier of fact, the motion for summary judgment shall be denied. [FN9]

> FN9. In light of this ruling, we need not address the collateral estoppel issue raised by SFUSD in its letter brief.

The judgment is reversed and the matter remanded to the trial court for redetermination of whether the action was filed within the limitations period, consistent with the principles expressed in this decision.

ANDERSON, P.J., and POCHE, J., concur.

37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305, 102 Ed. Law Rep. 705, 95 Cal. Daily Op. Serv. 6672, 95 Daily Journal D.A.R. 11,290

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 FR 41826-01, 1987 WL 137988 (F.R.)

RULES and REGULATIONS

ENVIRONMENTAL PROTECTION AGENCY

40 CFR Part 763

[OPTS-62048E; FRL-3269-8]

Asbestos-Containing Materials in Schools

Friday, October 30, 1987

*41826 AGENCY: Environmental Protection Agency (EPA).

ACTION: Final rule.

SUMMARY: EPA is issuing a final rule under section 203 of Title II of the Toxic Substances
Control Act (TSCA), 15 U.S.C. 2643, to require all local education agencies (LEAs) to identify
asbestos-containing materials (ACM) in their school buildings and take appropriate actions to
control release of asbestos fibers. The LEAs are required to describe their activities in
management plans, which must be made available to all concerned persons and submitted to
State Governors. This final rule requires LEAs to use specially-trained persons to conduct
inspections for asbestos, develop the management plans, and design or conduct major actions to
control asbestos. Exclusions are provided for LEAs which have previously conducted inspections
and for LEAs subject to any state requirement at least as stringent as the comparable requirement
in this final rule.

DATES: In accordance with 40 CFR 23.5, this rule shall be promulgated for purposes of judicial
review at 1 p.m. Eastern Standard Time on November 13, 1987. This rule shall be effective on
December 14, 1987. The incorporation by reference in the rule is approved by the Director of the
Federal Register as of December 14, 1987.

FOR FURTHER INFORMATION CONTACT: Edward A. Klein, Director, TSCA Assistance
Office (TS-799), Office of Toxic Substances, Environmental Protection Agency, Rm. E-543, 401
M St., SW., Washington, DC 20460, Telephone: (202-554-1404).

SUPPLEMENTARY INFORMATION:

I. Background

A. Description of the Enabling Legislation

On October 22, 1986, President Reagan signed into law the Asbestos Hazard Emergency
Response Act (AHERA) which enacted, among other provisions, Title II of the Toxic Substances
Control Act (TSCA) 15 U.S.C. sections 2641 through 2654. Section 203 of Title II, 15 U.S.C.

2643, requires EPA to propose rules by April 20, 1987 (180 days after enactment), and to promulgate final rules by October 17, 1987 (360 days after enactment), regarding: (1) The inspection of all public and private school buildings for ACM; (2) the identification of circumstances requiring response actions; (3) description of the appropriate response actions; (4) the implementation of response actions; (5) the establishment of a reinspection and periodic surveillance program for ACM; (6) the establishment of an operations and maintenance program for friable ACM; (7) the preparation and implementation of asbestos management plans by LEAs and the submission of the management plans to State Governors, who may review the plans and approve or disapprove them; and (8) the transportation and disposal of waste ACM from schools. This final rule implements the Title II requirements to issue the section 203 rules (except for transportation and disposal, as discussed further below).

Section 206 of TSCA Title II, 15 U.S.C. 2646, also requires EPA to issue by April 20, 1987, a final model accreditation plan for persons who inspect for asbestos, develop management plans, and design or conduct response actions. States are required to adopt an accreditation program at least as stringent as the EPA model within 180 days after the beginning of their next legislative session. Accreditation of laboratories which analyze asbestos bulk samples and asbestos air samples is also required by TSCA Title II. The National Bureau of Standards (NBS), U.S. Department of Commerce, is required to establish the bulk sampling accreditation program by October 17, 1987, and the air sampling accreditation program by October 12, 1988.

States were required to notify LEAs by October 17, 1987, regarding where to submit management plans. LEAs must submit those plans to their State no later than October 12, 1988. The plans must include the results of school building inspections and a description of all response actions planned, completed, or in progress. After receiving a management plan, States are allowed 90 days to disapprove the plan. If the plan is disapproved, the State must provide a written explanation of the disapproval and the LEA must revise the plan within 30 days to conform with the State's suggested changes. The 30-day period can be extended to 90 days by the State. LEAs are required to begin implementation of their management plans by July 9, 1989, and to complete implementation in a timely fashion.

Transport and disposal rules under TSCA section 203(h) have not yet been proposed. In accordance with TSCA section 204(f), therefore, LEAs shall provide for transportation and disposal of asbestos in accordance with the most recent version of EPA's "Asbestos Waste Management Guidance." Applicable provisions of that document are included as Appendix D of this rule. Regulations governing transport of asbestos-containing waste, including school waste already regulated by the National Emission Standard for Hazardous Air Pollutants (NESHAP) (40 CFR Part 61, Subpart M) under the Clean Air Act (42 U.S.C. section 7401, et seq.), were promulgated by the Department of Transportation (DOT) (49 CFR Part, 173 Subpart J). The NESHAP and DOT rules must be followed, according to the "Asbestos Waste Management Guidance." These rules will be sufficient to ensure the proper loading and unloading of vehicles and to ensure the physical integrity of containers.

Section 203(1) requires Department of Defense schools to carry out asbestos identification, inspection and management activities in a manner comparable to the manner in which an LEA is required to carry out such activities. EPA interprets the language of this section which states that such activities shall be carried out "to the extent feasible and consistent with the national security" as recognition that existing agreements with foreign governments may make it difficult to carry out certain provisions of this regulation.

Since this rule has been signed by the EPA Administrator by October 17, 1987, the rule has been promulgated within the statutory time frame required by section 203 of TSCA Title II. In accordance with 40 CFR 23.5, however, solely for purposes of judicial review deadlines under section 19 of TSCA Title I, the rule is considered to be promulgated at 1 p.m. eastern time, 14 days after publication in the Federal Register. Thus, the period in which petitions for review of this rule may be filed under section 19 commences 14 days after publication.

B. Previous EPA Asbestos Activities

EPA has undertaken a variety of technical assistance and regulatory activities designed to control ACMs in buildings and minimize inhalation of asbestos fibers.
1. Technical Assistance Program. Since 1979, EPA staff have assisted schools and other building owners in identifying and controlling ACM in their buildings. Through a cooperative agreement with the American Association of Retired Persons (AARP), EPA has hired architects, engineers, and *41827 other professionals to provide on-site assistance to school officials and other building owners. With AARP assistance, many school officials and building owners have effectively and safely dealt with ACM in ways that are appropriate for the particular situation in their building.
In addition, EPA has published state-of-the-art guidance to help identify and control asbestos in buildings. EPA's principal asbestos guidance document, "Guidance for Controlling Asbestos-Containing Materials in Buildings," (EPA 560/5-85-024, also known as the "Purple Book") was expanded and updated in June 1985, based on recommendations from recognized national experts. The document provides criteria for building owners to use in deciding which abatement method is most appropriate for each particular situation.
An important EPA goal has been to provide training for people involved in all aspects of the identification and control of asbestos. EPA has established five Asbestos Information and Training Centers to provide information concerning the identification and abatement of asbestos hazards and to train people in proper asbestos abatement techniques. The five centers are located at the Georgia Institute of Technology in Atlanta, the University of Kansas in Kansas City, Tufts University in Medford, Massachusetts, the University of Illinois in Chicago, and the University of California at Berkeley. Courses attended by more than 8,000 building owners and managers, maintenance personnel, school officials, architects, consultants, and abatement contractors have been taught at the centers since December 1984.
Finally, because of the large number of asbestos abatement projects and the short-term nature of many of them, EPA believes that contractors should be State-certified and that States should oversee projects to ensure that they are properly performed. EPA has provided models for State certification legislation and start-up funding for the initiation of 38 State oversight programs.
2. EPA's regulatory program. In the Federal Register of May 27, 1982 (47 FR 23360), EPA issued a school identification and notification rule (hereinafter called the 1982 Asbestos-in-Schools Rule). This rule required school officials by June 28, 1983, to inspect all school buildings for friable materials, take a minimum of three samples of each type of friable material found, analyze samples using polarized light microscopy (PLM) to determine if asbestos is present, and keep records of the findings. (40 CFR Part 763, Subpart F)
School district officials who found friable ACM were required to notify employees of the location of the materials, post a notification form in the primary administrative and custodial offices and faculty common rooms, provide maintenance and custodial employees with a guide

for reducing asbestos exposure, and notify parent-teacher associations or parents directly of the inspection results.

EPA also issued a rule to protect public employees who perform asbestos abatement work in those States not covered by the current asbestos standard issued by the Occupational Safety and Health Administration (OSHA), U.S. Department of Labor. This rule (40 CFR Part 763, Subpart G) complements the OSHA asbestos regulations that protect private sector workers, and public employees in States with OSHA-approved State plans, from exposure to asbestos in occupational settings. The rule requires specific work practices, personal protective equipment, environmental monitoring, medical exams, and other provisions. The EPA rule also includes a provision not in the OSHA rule, i.e., notification to EPA generally 10 days before an asbestos abatement project is begun when public employees are doing the work. OSHA issued revised regulations regarding occupational asbestos exposure published in the Federal Register of June 20, 1986 (51 FR 22612). EPA issued in the Federal Register of February 25, 1987 (52 FR 5618), a revision of its worker protection rule to make it consistent with the new OSHA regulations.

3. Recent developments. EPA issued an Advance Notice of Proposed Rulemaking (ANPR) on August 12, 1986 (51 FR 28914), entitled "Asbestos-Containing Materials in Schools: Inspection, Notification, Management Plans and Technical Assistance." The purpose of this ANPR was to solicit comments on the future direction of EPA's program to reduce risks from asbestos in schools and to solicit information about a variety of technical and policy issues.

Prior to enactment of TSCA Title II, EPA had also initiated development of two new guidance documents on asbestos control. One document was being developed to provide more detailed guidance about assessing ACM in buildings and selecting abatement actions. A second document was being developed to provide more detailed guidance about practices and procedures which should be included in an operations and maintenance program. Both documents had been developed with the assistance of panels of national experts who convened in Washington, DC to discuss technical and operational issues associated with these subjects. The work done in these two guidance documents has been valuable in developing provisions of this rule.

Also, in 1986, EPA, in cooperation with the National Institute for Occupational Safety and Health (NIOSH), U.S. Department of Health and Human Services, published "A Guide to Respiratory Protection for the Asbestos Abatement Industry" to provide practical guidance in the selection and use of respiratory protection to persons who work in asbestos abatement. The "Guide" also provides information relevant to other work activities, such as maintenance or repair, where the exposure to asbestos or the potential for exposure exists. The "Guide" was updated in September 1986 to include the text of the OSHA June 1986 revision of its asbestos standard.

C. Development of the Rule

The April 1987 proposed rule was developed through the process of regulatory negotiation, an alternative process for developing regulations in which individuals and groups with negotiable interests directly affected by the rulemaking work together with EPA in a cooperative venture to develop a proposed rule by committee agreement. The negotiation group was established as a Federal Advisory Committee and consisted of representatives of national educational organizations, labor unions, asbestos product manufacturers, the environmental community, asbestos abatement contractors, professional associations of architects, consulting engineers, industrial hygienists, States, and EPA.

After an organizational meeting in Washington, DC on January 23, 1987 (announced in the

Federal Register of January 13, 1987, 52 FR 1377), the committee was established with 23 interests represented. Meetings were scheduled on February 5 and 6, February 17 and 18, March 9 and 10, March 26 and 27, and April 1 thru 3. During the March 10, 1987, meeting, the plenary session of the Committee accepted two more parties on the committee, one taking a seat representing State attorneys general, the other (representing big city schools) sharing a seat with a previously seated member representing big city schools.

*41828 Members of Negotiating Committee

The members of the negotiating committee and their interest represented are as follows:
1. Allen Abend, Council of Chief State School Officers.
2. Bill Borwegen, Service Employees International Union/Jordan Barab, American Federation of State, County, and Municipal Employees (school service employees).
3. Dr. William Brown, Baltimore City Schools/Michael Young, New York City Law Department (big city schools).
4. Brian Christopher, Committee on Occupational Safety and Health.
5. Donald Elisburg, Laborers' International Union and Laborers-AGC Education and Training Fund.
6. Kellen Flannery, Council for American Private Education.
7. Steve Hays, asbestos abatement engineer.
8. Jesse Hill, manufacturers of asbestos pipe and block insulation products.
9. Edward Kealy, National School Boards Association.
10. Lloyd A. Kelley, Jr., Superintendent of Schools Rutland S.W. Vermont, Supervisory Union (rural schools).
11. William Lewis, Manufacturers of asbestos surfacing products.
12. Lynn MacDonald, Sheet Metal Workers International Association.
13. Claudia Mansfield, American Association of School Administrators.
14. Roger Morse, American Institute of Architects.
15. David Ouimette, Colorado Department of Health (States with developing asbestos programs).
16. Joel Packer, National Education Association.
17. Robert Percival, Environmental Defense Fund.
18. Miriam Rosenberg, National PTA.
19. Paul Schur, Connecticut Department of Health/Dr. Donald Anderson, Illinois Department of Public Health (States with implemented asbestos programs).
20. Robert Sheriff, American Industrial Hygienists Association.
21. David Spinazzolo, Association of Wall and Ceiling Industries (asbestos abatement contractors).
22. Susan Vogt, U.S. E.P.A.
23. John Welch, Safe Buildings Alliance (former manufacturers of asbestos products).
24. Margaret Zaleski, National Association of State Attorneys General.

Facilitation Team and Executive Secretary

Owen Olpin, Consultant to EPA
Eileen B. Hoffman, Federal Mediation & Conciliation Services
Kathy Tyson, U.S. E.P.A. (Executive Secretary)
Leah Haygood, The Conservation Foundation
Dan Dozier, Federal Mediation & Conciliation Services

John Wagner, Federal Mediation & Conciliation Services

The committee met in plenary sessions as well as in four work groups. Each work group focused on a cluster of related issues and reported to the plenary on options and recommendations. The plenary retained all decision-making power of the committee and often gave guidance to work groups. Generally, for each day of a plenary session, work groups convened the day before to prepare reports for the plenary. Neutral facilitators were present at all work group and plenary meetings to assist the negotiations in moving forward.

At the end of the 2-month negotiating process on April 3, 1987, and after extensive efforts, the committee was in general agreement on the vast majority of issues before it for the purposes of the proposal. Agreement to solicit further comment about alternatives was often important in developing provisions to be included as proposals. At the close of the negotiations, some items remained at issue and were not subject to universal agreement. These consisted of the following: definitions and response actions for damaged and significantly damaged thermal system insulation ACM (relates to being deemed nonfriable in the inspection section) and damaged and significantly damaged friable surfacing and miscellaneous ACM. Also, the definition of asbestos debris and the nature of cleaning practices (initial and routine) for friable ACBM or damaged or significantly damaged thermal insulation under the operations and maintenance section were still at issue. While extending negotiations beyond April 3, 1987, may well have enabled the committee to resolve these issues, the Congressional April 20, 1987, deadline for issuing a proposed rule precluded this possibility. Although Federal Register practices precluded the Agency from highlighting these issues in the text of the proposed rule, the public docket contains a copy of the proposed rule which clearly identifies the sections which contain these unresolved issues.

On April 3, 1987, the facilitators prepared, for members' signatures, statements supporting the use of the agreed-on portions of the regulatory language as a basis for a Notice of Proposed Rulemaking. Members representing 20 of the 24 interests seated on the committee signed these statements. Members representing 4 of the interests seated on the committee did not sign the statements, due to the status of the unresolved issues described above. Mr. Paul Schur, a corepresentative of states with an implemented asbestos program (an interest that did not sign), signed in an individual capacity. All committee members, signatories and non-signatories alike, retained for themselves and for their constituencies all rights which bear on the rulemaking, including the right to comment fully during the public comment period.

Notably, signatories supporting the agreed-on regulatory language as a basis for a Notice of Proposed Rulemaking did so in considering that language as a whole. The proposed rule's agreed-on language was not necessarily ideal from any one party's perspective.

On April 17, 1987, the EPA Administrator signed the proposed rule developed through the negotiated rulemaking process. The proposed rule and the final Model Accreditation Plan were published in the Federal Register of April 30, 1987. EPA's decision to use the results of the negotiated rulemaking process as a basis for a proposed rule was explained in the April 30 document (52 FR 15833).

The 60-day public comment period ended on June 29. During this time period, EPA staff conducted 10 Regional briefings on the proposed rule for State officials and a number of additional briefings for interested parties. These parties included school administrators, school board officials and building owners. At the conclusion of the public comment period, the Agency had received over 170 comments on the proposed rule.

Several comments received by EPA requested the Agency to hold a public hearing on the proposed rule. As a result of these comments, EPA conducted public hearings on August 25 and

26. Over 25 individuals representing a variety of groups testified before EPA. The testimony and transcript from the public hearing were included in the rulemaking's docket.

52 FR 41826, *41828

§§ 763.85 Inspection and reinspections.

(a) Inspection. (1) Except as provided in paragraph (a)(2) of this section, before October 12, 1988, local education agencies shall inspect each school building that they lease, own, or otherwise use as a school building to identify all locations of friable and nonfriable ACBM.
(2) Any building leased or acquired on or after October 12, 1988, that is to be used as a school building shall be inspected as described under paragraphs (a) (3) and (4) of this section prior to use as a school building. In the event that emergency use of an uninspected building as a school building is necessitated, such buildings shall be inspected within 30 days after commencement of such use.
(3) Each inspection shall be made by an accredited inspector.
(4) For each area of a school building, except as excluded under §§ 763.99, each person performing an inspection shall:
(i) Visually inspect the area to identify the locations of all suspected ACBM.
(ii) Touch all suspected ACBM to determine whether they are friable.
(iii) Identify all homogeneous areas of friable suspected ACBM and all homogeneous areas of nonfriable suspected ACBM.
(iv) Assume that some or all of the homogeneous areas are ACM, and, for each homogeneous area that is not assumed to be ACM, collect and submit for analysis bulk samples under §§§§ 763.86 and 763.87.
(v) Assess, under §§ 763.88, friable material in areas where samples are collected, friable material in areas that are assumed to be ACBM, and friable ACBM identified during a previous inspection.
(vi) Record the following and submit to the person designated under §§ 763.84 a copy of such record for inclusion in the management plan within 30 days of the inspection:
(A) An inspection report with the date of the inspection signed by each accredited person making the inspection, State of accreditation, and if applicable, his or her accreditation number.
(B) An inventory of the locations of the homogeneous areas where samples are collected, exact location where each bulk sample is collected, dates that samples are collected, homogeneous areas where friable suspected ACBM is assumed to be ACM, and homogeneous areas where nonfriable suspected ACBM is assumed to be ACM.
(C) A description of the manner used to determine sampling locations, the name and signature of each accredited inspector who collected the samples, State of accreditation, and, if applicable, his or her accreditation number.
(D) A list of whether the homogeneous areas identified under paragraph (a)(4)(vi)(B) of this section are surfacing material, thermal system insulation, or miscellaneous material.
(E) Assessments made of friable material, the name and signature of each accredited inspector making the *41849 assessment, State of accreditation, and if applicable, his or her accreditation number.
(b) Reinspection. (1) At least once every 3 years after a management plan is in effect, each local education agency shall conduct a reinspection of all friable and nonfriable known or assumed ACBM in each school building that they lease, own, or otherwise use as a school building.
(2) Each inspection shall be made by an accredited inspector.

(3) For each area of a school building, each person performing a reinspection shall:

(i) Visually reinspect, and reassess, under §§ 763.88, the condition of all friable known or assumed ACBM.

(ii) Visually inspect material that was previously considered nonfriable ACBM and touch the material to determine whether it has become friable since the last inspection or reinspection.

(iii) Identify any homogeneous areas with material that has become friable since the last inspection or reinspection.

(iv) For each homogeneous area of newly friable material that is already assumed to be ACBM, bulk samples may be collected and submitted for analysis in accordance with §§§§ 763.86 and 763.87.

(v) Assess, under §§ 763.88, the condition of the newly friable material in areas where samples are collected, and newly friable materials in areas that are assumed to be ACBM.

(vi) Reassess, under §§ 763.88, the condition of friable known or assumed ACBM previously identified.

(vii) Record the following and submit to the person designated under §§ 763.84 a copy of such record for inclusion in the management plan within 30 days of the reinspection:

(A) The date of the reinspection, the name and signature of the person making the reinspection, State of accreditation, and if applicable, his or her accreditation number, and any changes in the condition of known or assumed ACBM.

(B) The exact locations where samples are collected during the reinspection, a description of the manner used to determine sampling locations, the name and signature of each accredited inspector who collected the samples, State of accreditation, and, if applicable, his or her accreditation number.

(C) Any assessments or reassessments made of friable material, the name and signature of the accredited inspector making the assessments, State of accreditation, and if applicable, his or her accreditation number.

(c) General. Thermal system insulation that has retained its structural integrity and that has an undamaged protective jacket or wrap that prevents fiber release shall be treated as nonfriable and therefore is subject only to periodic surveillance and preventive measures as necessary.

§§ 763.86 Sampling.

(a) Surfacing material. An accredited inspector shall collect, in a statistically random manner that is representative of the homogeneous area, bulk samples from each homogeneous area of friable surfacing material that is not assumed to be ACM, and shall collect the samples as follows:

(1) At least three bulk samples shall be collected from each homogeneous area that is 1,000 ft 2 or less, except as provided in §§ 763.87(c)(2).

(2) At least five bulk samples shall be collected from each homogeneous area that is greater than 1,000 ft 2 but less than or equal to 5,000 ft 2 , except as provided in §§ 763.87(c)(2).

(3) At least seven bulk samples shall be collected from each homogeneous area that is greater than 5,000 ft 2 , except as provided in §§ 763.87(c)(2).

(b) Thermal system insulation. (1) Except as provided in paragraphs (b) (2) through (4) of this section and §§ 763.87(c), an accredited inspector shall collect, in a randomly distributed manner, at least three bulk samples from each homogeneous area of thermal system insulation that is not assumed to be ACM.

(2) Collect at least one bulk sample from each homogeneous area of patched thermal system insulation that is not assumed to be ACM if the patched section is less than 6 linear or square feet.

(3) In a manner sufficient to determine whether the material is ACM or not ACM, collect bulk samples from each insulated mechanical system that is not assumed to be ACM where cement or plaster is used on fittings such as tees, elbows, or valves, except as provided under §§ 763.87(c)(2).
(4) Bulk samples are not required to be collected from any homogeneous area where the accredited inspector has determined that the thermal system insulation is fiberglass, foam glass, rubber, or other non-ACBM.
(c) Miscellaneous material. In a manner sufficient to determine whether material is ACM or not ACM, an accredited inspector shall collect bulk samples from each homogeneous area of friable miscellaneous material that is not assumed to be ACM.
(d) Nonfriable suspected ACBM. If any homogeneous area of nonfriable suspected ACBM is not assumed to be ACM, then an accredited inspector shall collect, in a manner sufficient to determine whether the material is ACM or not ACM, bulk samples from the homogeneous area of nonfriable suspected ACBM that is not assumed to be ACM.

§§ 763.87 Analysis.

(a) Local education agencies shall have bulk samples, collected under §§ 763.86 and submitted for analysis, analyzed for asbestos using laboratories accredited by the National Bureau of Standards (NBS). Local education agencies shall use laboratories which have received interim accreditation for polarized light microscopy (PLM) analysis under the EPA Interim Asbestos Bulk Sample Analysis Quality Assurance Program until the NBS PLM laboratory accreditation program for PLM is operational.
(b) Bulk samples shall not be composited for analysis and shall be analyzed for asbestos content by PLM, using the "Interim Method for the Determination of Asbestos in Bulk Insulation Samples" found at Appendix A to Subpart F in 40 CFR Part 763.
(c)(1) A homogeneous area is considered not to contain ACM only if the results of all samples required to be collected from the area show asbestos in amounts of 1 percent or less.
(2) A homogeneous area shall be determined to contain ACM based on a finding that the results of at least one sample collected from that area shows that asbestos is present in an amount greater than 1 percent.
(d) The name and address of each laboratory performing an analysis, the date of analysis, and the name and signature of the person performing the analysis shall be submitted to the person designated under §§ 763.84 for inclusion into the management plan within 30 days of the analysis.

§§ 763.88 Assessment.

(a)(1) For each inspection and reinspection conducted under §§ 763.85 (a) and (c) and previous inspections specified under §§ 763.99, the local education agency shall have an accredited inspector provide a written assessment of all friable known or assumed ACBM in the school building.
(2) Each accredited inspector providing a written assessment shall sign and date the assessment, provide his or her State of accreditation, and if applicable, accreditation number, and submit a copy of the assessment to the person designated under §§ 763.84 for inclusion in the management plan within 30 days of the assessment.
*41850 (b) The inspector shall classify and give reasons in the written assessment for classifying the ACBM and suspected ACBM assumed to be ACM in the school building into one of the following categories:

(1) Damaged or significantly damaged thermal system insulation ACM.

(2) Damaged friable surfacing ACM.

(3) Significantly damaged friable surfacing ACM.

(4) Damaged or significantly damaged friable miscellaneous ACM.

(5) ACBM with potential for damage.

(6) ACBM with potential for significant damage.

(7) Any remaining friable ACBM or friable suspected ACBM.

(c) Assessment may include the following considerations:

(1) Location and the amount of the material, both in total quantity and as a percentage of the functional space.

(2) Condition of the material, specifying:

(i) Type of damage or significant damage (e.g., flaking, blistering, water damage, or other signs of physical damage).

(ii) Severity of damage (e.g., major flaking, severely torn jackets, as opposed to occasional flaking, minor tears to jackets).

(iii) Extent or spread of damage over large areas or large percentages of the homogeneous area.

(3) Whether the material is accessible.

(4) The material's potential for disturbance.

(5) Known or suspected causes of damage or significant damage (e.g., air erosion, vandalism, vibration, water).

(6) Preventive measures which might eliminate the reasonable likelihood of undamaged ACM from becoming significantly damaged.

(d) The local education agency shall select a person accredited to develop management plans to review the results of each inspection, reinspection, and assessment for the school building and to conduct any other necessary activities in order to recommend in writing to the local education agency appropriate response actions. The accredited person shall sign and date the recommendation, provide his or her State of accreditation, and, if applicable, provide his or her accreditation number, and submit a copy of the recommendation to the person designated under §§ 763.84 for inclusion in the management plan.

52 FR 41826, *41848 -41850