IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| OWENS CORNING, *et al.*, ) | Bankruptcy Case No. 00-3837 (JKF) |
| ) | |
| Debtors. ) | |
| ) | |
| THE STATE OF NORTH DAKOTA, ) | |
| ) | |
| Appellant, ) | Civil Action No. 05-573 (JPF) |
| ) | |
| v. ) | |
| ) | |
| OWENS CORNING, *et al.*, ) | |
| ) | |
| Appellees. ) | |

**APPELLEES' BRIEF ON THE STATE OF NORTH DAKOTA'S APPEAL OF
THE DISMISSAL OF ITS ASBESTOS PROPERTY DAMAGE CLAIMS**

Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
SAUL EWING LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Counsel for Appellees, Debtors
 and Debtors-in-Possession

-and-

Mary Beth Hogan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

Special Counsel for Appellees, Debtors
 and Debtors-in-Possession

Dated: September 20, 2005

# TABLE OF CONTENTS

Page

I.  Statement of the Issues Presented ............................................................................. 1

II. Statement of the Facts ................................................................................................ 1

III. Legal Argument ......................................................................................................... 3

    A.   The Language of the Act ................................................................................. 4
    B.   The Legislative History ................................................................................... 6
    C.   North Dakota's Arguments Lack Merit .......................................................... 9

IV. Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page

## CASES

*Adams Public School District v. Asbestos Corp.*,
  7 F.3d 717 (8th Cir. 1993) .................................................................................................... 10

*Hilton v. North Dakota Education Association*,
  655 N.W.2d 60 (N.D. 2002) ..................................................................................................... 6

*MDU Resources Group v. W.R. Grace & Co.*,
  14 F.3d 1274 (8th Cir. 1994) ................................................................................................ 3, 11

*Stewart v. Ryan*,
  520 N.W.2d 39 (N.D. 1994) .................................................................................................... 10

*United States v. Oregon*,
  366 U.S. 643 (1961) ................................................................................................................. 6

*Weinberger v. Hynson, Westcott & Dunning*,
  412 U.S. 609 (1973) ............................................................................................................... 10

## STATUTES

North Dakota Cent. Code § 28-01-47 (2005) ................................................................ 1, 2, 4, 5, 10, 11

# I. STATEMENT OF THE ISSUES PRESENTED

The issue on appeal is whether the Bankruptcy Court correctly held that the North Dakota statute setting August 1, 1997 as the "specific date by which public building owners must bring a cause of action for removal or other abatement costs associated with the presence of asbestos in their buildings," North Dakota Cent. Code § 28-01-47(1) (2005) (the "Act") (A-6), barred the State of North Dakota's asbestos property damage claims, which were not brought until 2002. *See* Order Granting Objections to Asbestos Property Damage Claims of the State of North Dakota, July 8, 2005 (A-1).

# II. STATEMENT OF THE FACTS

On May 5, 1993, the governor of North Dakota signed into law Senate Bill 2542, which created § 28-01-47 of the North Dakota Century Code. *See* Legislative History, attached as Exhibit A to Debtors' Reply to North Dakota Claimants' Response to Objections to Certain Asbestos Property Damage Claims, at 2-3 ("Legislative History") (A-133 to -134). The first paragraph of § 28-01-47 states:

> The legislative assembly finds that it is in the interest of the general public, particularly those persons who may bring claims regarding materials containing asbestos in public buildings and those against whom the claims may be brought, to set a specific date by which public building owners must bring a cause of action for removal or other abatement costs associated with the presence of asbestos in their buildings. By enactment of this statute of limitations, the legislative assembly does not imply that suits would otherwise be barred by an existing limitations period.

North Dakota Cent. Code § 28-01-47 (2005) (A-6). The second paragraph provides:

> Notwithstanding any other law to the contrary, any action to recover costs for removal and replacement of asbestos or materials containing asbestos from a public building; to recover costs for other measures taken to locate, correct, or ameliorate any problem related to asbestos in a public building; or for reimbursement for removal and replacement, correction, or amelioration of an asbestos problem in a public building, must be commenced prior to August 1, 1997. Any such action which would otherwise be barred before August 1, 1997,

1

22023783

as a result of expiration of the applicable period of limitation, is revived or extended. An asbestos action revived or extended under this subsection must be commenced prior to August 1, 1997.

*Id.* The third and final paragraph states:

For purposes of this section, "public building" means any building owned by any county, city, township, school district, park district, or any other unit of local government, the state or any agency, industry, institution, board, or department thereof.

*Id.*

A year after the passage of § 28-01-47, the State of North Dakota ("North Dakota") did bring an asbestos property damage action in connection with pipe and block insulation—the same types of asbestos products sold by Owens Corning and its affiliated debtors and debtors-in-possession (the "Debtors")—in its schools and other state buildings. *See* Exhibit 1 to the Declaration of Sean Mack ("Mack Dec."), attached as Exhibit A to Debtors' Objection to Asbestos Property Damage Claims of the State of North Dakota (Claim #8774 and #8922) ("Debtors' Objection") (A-29). North Dakota's 1994 property damage claim was not, however, filed against the Debtors but against another pipe and block insulation manufacturer. At no time prior to August 1997—indeed, at no time prior to April 2002—did North Dakota bring a property damage suit against the Debtors.

On October 5, 2000, the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for reorganization under Chapter 11 of the Bankruptcy Code. On November 27, 2001, the Bankruptcy Court signed an order that set April 15, 2002 as the deadline for filing proofs of claim against the Debtors.

On April 15, 2002, in response to the Bankruptcy Court's bar date notice, North Dakota filed against the Debtors two asbestos property damage proofs of claim for all state buildings, one against Owens Corning and one against Fibreboard Corporation. *See* Exhibit 1 to the Mack

2

Dec. (A-38 to -41). North Dakota's supporting documentation for these claims consisted of a brief statement declaring that "[t]he supporting documentation is not available at this time but is being located by and obtained from the creditor." Exhibit 1 to the Mack Dec. (A-39 and -41).

On March 31, 2003, the Bankruptcy Court entered a case management order requiring North Dakota and all other asbestos property damage claimants to provide evidence of the Debtors' asbestos-containing products in claimants' buildings. *See* Mack Dec. ¶ 3 (A-26). North Dakota responded that product identification was "n/a" or "unknown" for 225 of its 232 state buildings, Exhibit 1 to the Mack Dec. (A-30 to -34), despite the fact that for at least 219 of those buildings, abatement had begun a decade earlier. *See* Legislative History at 11 (A-142) (North Dakota Senator Wayne Stenehjam stating at April 1993 hearing, "[t]he estimates for removing asbestos from NDSU from the 74 buildings is $3,000,045, and the University of North Dakota estimates, where they have some two hundred buildings most of which have some asbestos that will need to be removed or dealt with in one way or another, is estimated at $10 to $15 million dollars.").

### III. LEGAL ARGUMENT

North Dakota's brief is remarkable for what it omits. Though it purports to interpret § 28-01-47, the brief offers neither the relevant language of the statute nor specific references to the legislative history as support. Rather, virtually all of North Dakota's argument relies on *MDU Resources Group v. W.R. Grace & Co.*, 14 F.3d 1274 (8th Cir. 1994) ("*MDU*"), a case applicable to North Dakota private—not public—buildings that does not repeal or even mention the preexisting § 28-01-47. North Dakota cannot escape the unambiguous language of the Act, which states that North Dakota *public* buildings owners "must" bring "any action" related to asbestos in a public building by August 1, 1997. As the Bankruptcy Court correctly held, the Act

3

bars North Dakota's claims against the Debtors, since they were not brought until April 15, 2002. The Bankruptcy Court also correctly concluded that resorting to the Act's legislative history was unnecessary, given the clarity of the Act itself. Accordingly, this Court need not and should not consult the legislative record. In any event, the legislative history is entirely consistent with the statute's mandate that North Dakota had four years—until 1997—to bring any and all claims for asbestos property damage.

### A. The Language of the Act

The Bankruptcy Court correctly held that § 28-01-47 barred North Dakota's claim. The provisions of the statute, examined individually and as a whole, make this conclusion inescapable.

The Act begins,

> The legislative assembly finds that it is in the interest of the general public, particularly those persons who may bring claims regarding materials containing asbestos in public buildings and those against whom the claims may be brought, to set a specific date by which public building owners must bring a cause of action for removal or other abatement costs associated with the presence of asbestos in their buildings. By enactment of this statute of limitations, the legislative assembly does not imply that suits would otherwise be barred by an existing limitations period.

North Dakota Cent. Code § 28-01-47 (2005) (A-6). As this language makes clear, and as North Dakota's brief ignores, the statute was intended to benefit not just those bringing claims, but also defendants in asbestos-related suits. By setting a firm deadline by which all suits had to be brought, the Act aimed to provide a measure of certainty to the asbestos industry. Moreover, the statute declares that the deadline shall apply to causes of action "for removal or other abatement costs associated with the *presence* of asbestos in [public] buildings." Significantly, the statute does not require that the costs be associated with asbestos *contamination*, nor does it allow exemptions to the strict deadline for buildings containing asbestos that has not yet been

4

discovered, or for buildings containing asbestos that is not friable, or for any other possible fact patterns. Rather, the Act applies to any asbestos-related property damage claim brought by a public building owner.

The second paragraph of the Act declares,

> Notwithstanding any other law to the contrary, any action to recover costs for removal and replacement of asbestos or materials containing asbestos from a public building; to recover costs for other measures taken to locate, correct, or ameliorate any problem related to asbestos in a public building; or for reimbursement for removal and replacement, correction, or amelioration of an asbestos problem in a public building, must be commenced prior to August 1, 1997.

North Dakota Cent. Code § 28-01-47 (2005) (A-6). This portion makes clear that the Act permits no exceptions and that "[n]otwhithstanding any other law to the contrary", it applied to "any" asbestos-related property damage claim by a public building owner, including actions to recover the costs of locating, removing, replacing, correcting, or ameliorating "any problem related to asbestos in a public building."

Since North Dakota's claims, all pertaining to public buildings, were not brought until 2002, they are barred. Judge Fitzgerald agreed, declaring, "[A] fair reading of this statute indicates on its face, without a reference to the legislative history, that the claim by the public building owners in the State of North Dakota are barred." Transcript of Hearing Before Honorable Judith K. Fitzgerald, May 16, 2005 ("May 16, 2005 Tr."), at 31 (A-286); *see also* Transcript of Proceedings Before Honorable Judith K. Fitzgerald, June 21, 2005 ("June 21, 2005 Tr.") at 13 (A-307) (Judge Fitzgerald stating, "[The statute] says, Look, folks, you know you've got asbestos in your building. Go figure out what it is, what it's going to cost to re-mediate it, and bring a claim, and if you don't do it by 1997, you're not going to be able to do it after, and it seems pretty clear on its face.").

5

B.  **The Legislative History**

It is axiomatic that courts do not consult a statute's legislative history when the statute is clear on its face. *See, e.g.*, *United States v. Oregon*, 366 U.S. 643, 648 (1961) ("Having concluded that the provisions of 1 are clear and unequivocal on their face, we find no need to resort to the legislative history of the Act."); *Hilton v. N.D. Educ. Ass'n*, 655 N.W.2d 60, 64 (N.D. 2002) ("If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from the face of the statute."). The Bankruptcy Court correctly concluded that resort to the legislative history of the Act was not necessary. *See* May 16, 2005 Tr. at 36 (A-291) (Judge Fitzgerald stating, "I'm looking for legislative history to the extent that I need to go outside the face of the statute, but I've already indicated I think the statute's clear...."). The Bankruptcy Court was also correct in finding that, to the extent that the legislative history *is* examined, it is entirely consistent with both the language of the statute and a finding that the North Dakota claims are time-barred. As Judge Fitzgerald stated, "[T]he legislative history makes it clear that the state is imposing an obligation on building owners to figure out whether they do have a claim, and if so, to bring it by 1997." June 21, 2005 Tr. at 11 (A-305).

Contrary to the unsupported assertions in North Dakota's brief, the legislative history demonstrates that the Act was intended to impose the August 1, 1997 deadline not just on claims revived by the Act, but on *all* asbestos property damage claims by owners of public buildings. *See* Legislative History at 10 (A-141) (Senator Wayne Stenehjam, introducer of the bill, noting that the Act would "put all of these agencies on notice that they have until [August 1, 1997] to bring their claims," whereas "the current law as it exists would require or provide that claims for asbestos removal would run virtually forever because the statute starts to run to six years after

6

the time the agency knew or should reasonably have known that there was asbestos in those buildings."). Indeed, even proponents of the statute conceded the Act's broad reach. Jon Arnston, a Fargo attorney who had represented numerous school districts in suits against asbestos manufacturers, assumed the applicability of the deadline for all public buildings claims as a given: "As you know the bill *not only* sets a date by which asbestos litigation may be commenced by public entities but it also revives barred asbestos related claims of public entities." Legislative History at 28 (A-159) (emphasis added).

Moreover, North Dakota was well aware that August 1, 1997 was an absolute deadline, as reflected by the testimony of Douglas A. Bahr, an assistant attorney general for North Dakota. According to Mr. Bahr, who testified on behalf of North Dakota during the April 14, 1993 and April 16, 1993 hearings of the North Dakota Senate and House Industry Business Labor Committees,

> The Bill bars any action to recover for removal of asbestos or materials containing asbestos from a public building unless the action is brought before August 1, 1997. Thus, the Bill limits what would otherwise be virtually unlimited and perpetual exposure to liability for asbestos manufacturers without eliminating liability entirely; it affords a reasonable period within which asbestos or asbestos containing materials can be removed from public buildings and suits brought to recover the cost of such removal.

Legislative History at 19 (A-150). Even more succinctly, Mr. Bahr stated, "This Bill gives the state a specific deadline by which to assess its asbestos problem and initiate legal proceedings to place the cost of removing this serious health hazard upon the manufacturers rather than the taxpayers." Legislative History at 17 (A-148).[1]

---

[1] Ironically, a lobbyist for two asbestos defendants argued against the passage of the Act in part because the August 1, 1997 deadline would compress the commencement of lawsuits that otherwise would have been spread out over decades into a four-year period. *See* Legislative History at 15 (A-146) (Thomas Kelsch, testifying against the bill for U.S. Gypsum and W.R.

7

North Dakota largely ignores these portions of the legislative history, arguing instead that the Bankruptcy Court's reading of the statute is incorrect because "the Act [was] designed to help public building owners." Opening Brief of Appellant at 9. Certainly, public building owners comprise *one* of the groups the legislature intended to assist in passing the Act, but North Dakota's current views on the legislative intent are far too narrow.

The testimony of the assistant attorney general, Mr. Bahr, notes the multiple constituencies served by the Act. As he stated, "The Bill serves the interest of the citizens of the State of North Dakota by encouraging prompt removal of this health hazard from public buildings while at the same time permitting the State of North Dakota and other entities to recoup the expense of removing the asbestos from public buildings." Legislative History at 16 (A-147). Mr. Bahr's testimony highlights one of the legislature's overriding rationales for imposing a strict date by which all claims on behalf of public building owners had to be made: Setting a firm deadline benefits the public by forcing building owners to address any asbestos issues "prompt[ly]." Legislative History at 16 (A-147). *See also* Legislative History at 6 (A-137) (Senator Wayne Stenehjam, stating, "This will put all agencies on notice to abate or remove asbestos.").

At the same time, creating a firm deadline also helped the third group Mr. Bahr and others recognized as beneficiaries of the Act, the asbestos industry. *See* Legislative History at 19 (A-150) (Mr. Bahr states, "Senate Bill 2542 also protects asbestos manufacturers from what would otherwise be virtually unlimited and perpetual exposure to civil actions."); *see also* Legislative History at 13 (A-144) (Mr. Arnston, the school district attorney, stating in support of

---

Grace, stating, "[W]e would rather not have all the suits on every public building in the state sued and settled within the next four or five years.").

8

the bill, "I think it does give something back to the manufacturer because the bill does say the action must be commenced before August 1, 1997. The way the bill is written that's a closure.").

Accordingly, Judge Fitzgerald was correct when she stated, "[If] I go into the legislative history, it seems that the State was well aware of the fact that it had a time limit within which it had to find claims and bring those claims." May 16, 2005 Tr. at 16 (A-271).

C. <u>**North Dakota's Arguments Lack Merit**</u>

In urging reversal of the Bankruptcy Court's order, North Dakota argues (1) that the Act's deadline does not apply to actions that would not have expired prior to August 1, 1997, and (2) that its claims fall into that category.

North Dakota's first argument relies exclusively on a single sentence of the Act, which states that "[b]y enactment of this statute of limitations, the legislative assembly does not imply that suits would otherwise be barred by an existing limitations period." This does not say—as North Dakota suggests—that North Dakota public buildings owners are free to bring property damage actions after August 1, 1997. All it says is that, by extending the statute of limitations to August 1997, the legislature is not implying that public building owners' asbestos property damage claims are otherwise barred by another statute of limitations. This sentence was most likely added to counter arguments that the statute unconstitutionally rehabilitated expired rights. *See* Legislative History at 45-46 (A-176 to -177) (suggesting that the Act would violate the North Dakota Constitution). Thus, had the revival of expired claims been ruled unconstitutional, this sentence makes clear that the Act's reach (and, therefore, its deadline) would still apply to those claims that had not already been barred by an existing statute of limitations. Rather than supporting, this sentence actually cuts against North Dakota's argument, for it indicates that the Act did apply to claims that had not yet expired.

9

Moreover, North Dakota's interpretation of this sentence would render other portions of the Act redundant. *See Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 633 (1973) (relying on "the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect"); *Stewart v. Ryan*, 520 N.W.2d 39, 45 (N.D. 1994) ("In interpreting statutory provisions, every effort must be made to give each word, phrase, clause, and sentence meaning and effect."). Specifically, the second paragraph of the Act begins by stating, "Notwithstanding any other law to the contrary, *any* action ... *must* be commenced prior to August 1, 1997." North Dakota Cent. Code § 28-01-47 (2005) (A-6) (emphasis added). It finishes by declaring, "An asbestos action revived or extended under this subsection must be commenced prior to August 1, 1997." *Id.* If North Dakota were correct, and the reference to "any action" only included actions that had been revived or extended by the Act, the final sentence would serve no purpose; it would mean exactly the same thing as the earlier one. Instead, the inclusion of the final sentence demonstrates that "any action" necessarily includes a broader set of actions than North Dakota contends.

Nor does the 8th Circuit's *MDU* decision change the result. That case, which dealt with the issue of when the statute of limitations began to run for an asbestos property damage action brought by a private building owner, never mentioned North Dakota's public buildings or the Act.[2] Furthermore, the Act makes clear that its terms, not *MDU*'s holding, govern asbestos property damage claims brought by public buildings owners. Section 28-01-47 states, "Notwithstanding any other law to the contrary, any action... must be commenced prior to

---

[2] In contrast, in a separate case dealing with a public school's asbestos property damage claim decided just three months before *MDU*, the 8th Circuit relied on the Act in reversing the district court's holding that the school's claim was time-barred. *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717 (8th Cir. 1993).

10

August 1, 1997." North Dakota Cent. Code § 28-01-47 (2005) (A-6).[3] Finally, it is important to note that the North Dakota Legislature never amended or repealed § 28-01-47 in the wake of the *MDU* decision.[4]

---

[3] It is by no means clear that *MDU* even stands unambiguously for the proposition for which North Dakota cites it. In *MDU*, the court stated that "[t]he harm necessary to begin running the statute of limitations would certainly be manifest upon discovery of contamination, *and possibly earlier.*" *MDU*, 14 F.3d at 1279 n.8 (emphasis added). As an example, the court suggested that "remodeling could trigger abatement costs and would begin running the statute of limitations." *Id.*

[4] Although irrelevant to this appeal, North Dakota's argument that the Debtors somehow "conceded" that the statute of limitations on North Dakota's claims has not accrued because no harm has occurred is spurious. North Dakota continues to misstate Debtors' position. *See* May 16, 2005 Tr. at 28-29 (A-283 to -284) (Debtors' counsel correcting North Dakota's counsel for conflating the Debtors' product identification argument with its statute of limitations defense).

11

## IV.  CONCLUSION

Because the Act unambiguously sets August 1, 1997 as the deadline by which all asbestos property claims must be filed on behalf of public buildings owners, and because North Dakota's claims were not brought until 2002, the Debtors respectfully submit that this Court should affirm the Bankruptcy Court's determination that North Dakota's claims are barred by the Act.

Dated: September 20, 2005

        Respectfully submitted,

        SAUL EWING LLP

By: _____
        Norman L. Pernick (No. 2290)
        J. Kate Stickles (No. 2917)
        222 Delaware Avenue
        P.O. Box 1266
        Wilmington, DE  19899-1266
        (302) 421-6800

        Counsel for Appellees, Debtors and
          Debtors-in-Possession

        - and –

        DEBEVOISE & PLIMPTON LLP
        Mary Beth Hogan
        919 Third Avenue
        New York, NY  10022
        (212) 909-6000

        Special Counsel for Appellees, Debtors and
          Debtors-in-Possession