IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Bankruptcy Case No. 00-3837 (JKF) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| THE STATE OF NORTH DAKOTA, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 05-573 (JPF) |
| | ) | |
| v. | ) | |
| | ) | |
| OWENS CORNING, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

**APPENDIX TO APPELLEES' BRIEF ON THE STATE OF NORTH DAKOTA'S APPEAL OF THE DISMISSAL OF ITS ASBESTOS PROPERTY DAMAGE CLAIMS**

Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
SAUL EWING LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Counsel for Appellees, Debtors
  and Debtors-in-Possession

-and-

Mary Beth Hogan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

Special Counsel for Appellees, Debtors
  and Debtors-in-Possession

Dated: September 20, 2005

## TABLE OF CONTENTS

Page

Excerpts from Transcript of June 21, 2005 Proceedings[1]
Before Honorable Judith K. Fitzgerald ................................................................ A-300

---

[1] Please note that, while the transcript itself indicates that the proceedings took place on June 21, 2004, and while the record on appeal indicates that the proceedings took place on June 21, 2005, the actual date of the proceedings transcribed in the attached document was June 27, 2005.

22030176

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


   IN RE:                          :    Chapter 11
                                   :    Case No. 00-3837(JKF)
   OWENS CORNING, et al.,          :
                                   :    Jointly Administered
                                   :    June 21, 2004 (10:55 a.m.)
            Debtors.               :    (Wilmington)


                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JUDITH K. FITZGERALD
              UNITED STATES BANKRUPTCY COURT JUDGE
```

FILED 2005 JUL -6 AM 10:07 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

A - 300

7

together with Mr. Christie, and we'll supply you with --

THE COURT: That's fine. That's fine. That's pretty much what I was trying to ascertain. Okay, that order will also be entered.

MR. PERNICK: Thank you, Your Honor. That leaves us with items number 3, 5, and 10, and unless the Court has a preference, I propose to just go in the order of the agenda and start with number 3, which is the debtor's objection to an asbestos property damage claim of the State of North Dakota, and Mary Beth Hogan from the Debevoise firm is here to handle that, Your Honor.

THE COURT: All right.

MS. HOGAN: Good morning, Your Honor. Mary Beth Hogan for the debtors. The debtor was here at the May omnibus hearing, actually in Pittsburgh, on its objection to the property damage claims of the State of North Dakota on the grounds that they are barred by North Dakota Statute 280147, which is a statute that the North Dakota legislature passed in 1993 requiring that all actions relating to asbestos property damage claims by public building owners be brought by a date certain which was in August of 1997. The North Dakota claims at issue in this bankruptcy case were not brought until 2002, and so our objection requested that these claims be dismissed. The legislative history that we discussed in Pittsburgh in May is consistent with the

8

1  language of the statute, and the Court indicated at that time
2  that it thought that the statute was clear that the claims
3  were barred, that it didn't want to reargue the motion, but
4  it did give North Dakota the opportunity to file a sur-reply
5  to inform the Court if there was any additional legislative
6  history that the debtors had left out by some chance. North
7  Dakota has filed a sur-reply. It does not contain any
8  additional legislative history. It reargues the same cases
9  it had in its opposition brief to the objection. And I'm
10 mindful of the Court's direction not to reargue, so at this
11 point, unless there are questions, I would ask that the
12 objection to the North Dakota claims be granted.
13         THE COURT: Is anyone representing North Dakota
14 present?
15         MR. SPEIGHTS (TELEPHONIC): Your Honor, this is Dan
16 Speights, I'm on the telephone.
17         THE COURT: Okay, Mr. Speights, I'm sorry, but can
18 you keep your voice up. It's a little hard to hear you.
19         MR. SPEIGHTS (TELEPHONIC): Yes, Your Honor, I'll
20 try to do so. First of all, Your Honor, I want to thank you
21 for allowing me to file a sur-reply. As Your Honor recalls
22 the legislative history was attached to a reply brief, and
23 Your Honor allowed them at the hearing to file that reply.
24 And as I indicated in the short sur-reply that we have filed,
25 what the legislative history tells us is that there is

9

1  nothing in the legislative history that supports the
2  interpretations that the debtors want you to adopt in this
3  matter. Let me just quickly run in probably less than two
4  minutes through what I believe the legislative history and
5  the act tell us. Number one, everybody agrees that the North
6  Dakota act revives claims which were barred as of 1993.
7  However, that portion of the act has no applicability to
8  North Dakota's claims against OC because there were no
9  claims, that is, North Dakota had no claim against OC that
10 were barred. So, therefore, the act itself has no
11 applicability insofar as it revived claims that were barred
12 as to North Dakota's claims against OC. I may not have said
13 that perfectly clear, it's pretty hard to argue by telephone.
14         THE COURT: I understood it, Mr. Speights.
15         MR. SPEIGHTS (TELEPHONIC): However, very simply,
16 the revival portion of the act did not benefit the State of
17 North Dakota against OC because it had no claims in 1993
18 against OC. Secondly, Your Honor, everybody agrees that the
19 North Dakota act extended the statute of limitations for
20 public buildings, Your Honor, to August 1, 1997. Again,
21 however, that portion of the act has no applicability to the
22 North Dakota claim against OC because, again, it is
23 undisputed that North Dakota had no claim to be extended
24 against OC and Fiberboard in 1993. So again, Your Honor,
25 North Dakota got no benefit from the portion of the act which

1  extended the statute of limitations insofar as these claims
2  against OC and Fiberboard are concerned. Lastly, Your Honor,
3  everybody agrees that the act provides a deadline of August
4  1, 1997 to bring asbestos property damage claims. However,
5  the fundamental problem, the gravamen of the dispute here is,
6  North Dakota had no claim. Under the evidence before you
7  today and under the concession of Owens Corning and
8  Fiberboard, North Dakota had no claim before August 1, 1997
9  to bring against the debtors. So the fundamental question
10 is, whether the State of North Dakota, which got no benefit
11 from a revival and got no benefit from an extension,
12 nevertheless falls somehow into a crack and has its claim,
13 which it did not have in 1997, barred when the later -- when
14 the claim later accrued against the debtors. Now, we have
15 argued before, and I won't repeat the argument that the act
16 itself by its literal terms does not require that. At best
17 you could call that would be an anomaly. The act itself
18 clearly states that it applies to only those persons who may
19 bring claims, and the State of North Dakota had no claims
20 which it could have brought prior to 1997 against the debtor.
21          THE COURT: Well, Mr. Speights, was the asbestos
22 not installed prior to 1993?
23          MR. SPEIGHTS (TELEPHONIC): Oh, absolutely, Your
24 Honor.
25          THE COURT: Well, then, it had a claim.

11

MR. SPEIGHTS (TELEPHONIC): Your Honor, under North Dakota law, it had no claim because under the <u>Tioga</u> decision cited in my sur-reply brief, it could not have brought a claim prior to 1997. Only if you find that, as the debtors argued at the last hearing, that somehow the legislature intended to overrule the <u>Tioga</u> decision and find that North Dakota could have brought a lawsuit even though it had no injury, that you would find the act itself somehow gave a new cause of action, only then could North Dakota have filed a lawsuit before August 1, 1997. And there is nothing in the legislative history that suggests that the legislature intended to overrule <u>Tioga</u> and allow a claimant to bring a claim without an injury. And that's why, among other reasons, it was important to address this issue after we have looked at the legislative history.

THE COURT: Well, it seems to me that the legislative history makes it clear that the state is imposing an obligation on building owners to figure out whether they do have a claim, and if so, to bring it by 1997. The debtor, I think, argued that at the last hearing, and I agree that that seems to be the intent of the statue, and if the public building owners, including those buildings owned by the government, did not undertake that investigation, it seems to be that the equivalent of the statute of limitations' argument is that it imposed a statute of repose. I agree

12

that those words are not used, but nonetheless, that appears to be the intent of the statute.

MR. SPEIGHTS (TELEPHONIC): Your Honor, and I'm sure I'm repeating myself somewhat, but I did think about what you had said at the last hearing on the way home and since. First of all, the State of North Dakota could have investigated this claim every day from the time it was enacted to August 1, 1997, and it would not have concluded that it had a claim under existing North Dakota law because both the Supreme Court of North Dakota in Hebron (phonetical) and the 8th Circuit in Tioga have said you must be injured to bring a claim, and there's no evidence that it was injured. It seems to me where we get off track, respectfully, in statute of limitation cases, we always deal with two things: For hundreds of years, all over America, you could bring a claim within so many years after you had been injured, and then plaintiff's lawyers in the last -- probably since I've been practicing law, said, Well, that's not fair when you don't discover the injury until years later. That grew out of the malpractice cases where something was, you know, in your body or scissors or something else were sewed up in your body, and you didn't know until after the statute, and so we developed a modern discovery rule which goes to the knowledge of the building owner. This case has nothing to do with the knowledge of the building owner. The statute was applicable

A - 306

to the knowledge of the building owner because of the history we've gone into before the legislature was concerned about the knowledge of the state. This statute goes to the first requirement, the injury requirement -- I misstate it. This statute does not go to the first requirement, the injury requirement. That's what we don't have here. We don't have an injury prior to 1997 and for Your Honor to rule that there's some sort of repose would be to suggest that North Dakota, which gets no benefit from this statute whatsoever as to the debtors here, no quid pro quo, no revival, no extension, could not bring a claim if nevertheless barred because its claim did not prove prior to August 1, 1997.

THE COURT: But that's what statutes of repose do. I mean, you know, in manufacturing cases, for example, if there's a statute of repose, the injury to the person whose arm is severed or whatever awful thing happens doesn't accrue until after the statute of repose, but nonetheless that person is prevented from suing whoever it was back in the chain who benefits from the statute of repose, and that seems to be what this statute does. It says, Look, folks, you know you've got asbestos in your building. Go figure out what it is, what it's going to cost to re-mediate it, and bring a claim, and if you don't do it by 1997, you're not going to be able to do it after, and it seems pretty clear on its face.

MR. SPEIGHTS (TELEPHONIC): But, Your Honor, we

couldn't bring a claim before 1997. I agree the statute's proposed to do things that I don't like. What I can't agree with Your Honor, respectfully is, that the legislature intended with no benefit to the state, it could not bring a claim before 1997 to single out the state as to the only unit that could not bring a claim after 1997 which accrued after 1997.

THE COURT: Well, I don't think it is singling out the state, but if it did, it's the legislature who's doing it. It can certainly choose to do what it wants to do with buildings that the state owns, but nonetheless, it says public buildings, not all public buildings, I would think are owned by the state. There could be other governmental units that own public buildings. But even if it is limited to the state, it's the state legislature that's passing the law, so it certainly would understand the consequences of the law that it's enacting.

MR. SPEIGHTS (TELEPHONIC): Well, Your Honor, I appreciate the time you've given the matter, and the study you've given it, and we're back, of course, arguing the same thing I did in Pittsburgh. I don't believe it's a repose. I don't believe the state -- and I believe the legislature supports by omission more than anything else the fact that the legislature never intended to carve out just a few groups of buildings in North Dakota and say without any benefit to

15

1  you, we're going to benefit Owens Corning and Fiberboard
2  because you didn't have a cause of action before August 1,
3  1997 because you had not been injured, and therefore, even
4  when you are injured after 1997, you cannot sue the debtors
5  in this case. And I respect the fact that you disagree with
6  me interpretation.
7      THE COURT: All right, the state does get a benefit
8  though. It also knows that it, as a public building owner,
9  isn't going to be subject to suits because the asbestos would
10 have been re-mediated. So the state did get a benefit.
11     MR. SPEIGHTS (TELEPHONIC): Your Honor, the states
12 would never have recovered costs against Owens Corning and
13 Fiberboard under your interpretation.
14     THE COURT: Well, okay, whether it could or not, I
15 think is a hypothetical constraint, but I don't see why not.
16 I mean, if they sued Owens Corning and done the re-mediation,
17 assuming that Owens had some assets with which to pay, it
18 would have recovered against Owens just like it would have
19 recovered against any other entity that put asbestos into the
20 buildings that are clearly, even in your view, Mr. Speights,
21 subject to this statute. So, I don't think it's singling
22 out. I think it's being all inclusive and making sure that
23 within North Dakota asbestos issues were -- for property
24 damage in buildings were resolved in or by 1997, and
25 unfortunately, this one just isn't, but nonetheless, I think

16

it's now barred. And again, I want to make it clear. I don't think this is a statute of repose, but I do think it has some elements that act in that capacity. It is a statute of limitations clearly, that's what the legislature calls it, but I believe there's some analogy, and that's all I'm trying to raise with that statement. All right, I'll take an order from you, Ms. Hogan, that finalizes this matter. I have read the supplemental material. I don't see anything that changes my view from the May argument.

    MS. HOGAN: Thank you, Your Honor.

    MR. SPEIGHTS (TELEPHONIC): Thank you, Your Honor.

    THE COURT: Thank you.

    MR. SPEIGHTS (TELEPHONIC): May I be excused from the rest of the hearing?

    THE COURT: Yes, sir, thank you.

    MR. SPEIGHTS (TELEPHONIC): Your Honor --

    THE COURT: Mr. Speights, yes, I'm sorry, yes, you may be excused.

    MR. SPEIGHTS (TELEPHONIC): Thank you very much, Your Honor.

    THE COURT: Mr. Pernick?

    MR. PERNICK: Your Honor, the next matter is item number 5, which is a carryover from the last hearing. It's the stipulation and order increasing the limitation on compensation of Capstone Advisory Group as financial advisor

A -- 310